# EXHIBIT J

Christina L. Henry, WSBA# 31273
chenry@hdm-legal.com
Henry & DeGraaff, PS
787 Maynard Ave S
Seattle, WA 98104
Tel: +1-206-330-0595
Fax: +1-206-400-7609

Other Counsel on Signature Page

The Honorable James L. Robart

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Joseph J. Hesketh III,<br>*on his behalf and on behalf of other similarly*<br>*situated persons*<br><br>    Plaintiff,<br><br>    v.<br><br>Total Renal Care, Inc, on its own behalf and on<br>behalf of other similarly situated persons,<br><br>_____Defendants. | Case No: 2:20-cv-01733-JLR<br><br><br>SECOND AMENDED CLASS ACTION<br>COMPLAINT<br><br><br>(JURY DEMAND) |

Plaintiff, Joseph J. Hesketh III, individually, and on behalf of all other similarly situated,

sues Defendant, Total Renal Care, Inc. ("Total") individually, and on behalf of all others

similarly situated and alleges:

## I.    **OVERVIEW**

1.      An employee has the right to be paid for the time the employee does work for an

employer at the rates the parties have agreed. This action is filed because the

Defendants Defendant and others failed to pay the Plaintiff and the other class members the

SECOND AMENDED CLASS ACTION
COMPLAINT COMPLAINT - 1

HENRY & DEGRAAFF DEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

amounts, they were due to be paid for the work they performed and which the Defendants agreed to pay.

2.      Total is an integral part of DaVita, Inc. (DaVita) (formerly known as Total Renal Care Holdings, Inc.) DaVita is a nationwide entity that employs 77,00056,793 people in the United States to operate its profit driven business model through a number of entities controlled and operated by DaVita.

3.      Internally, DaVita treats 30 of its subsidiaries, including Total, as a "whole" without distinction between DaVita and Total or the other entities operating under DaVita's umbrella. There is a single payroll system utilized to administer payroll and issues relating to the compensation of its employees.

4.      Employees of Total and the other entities found under the DaVita umbrella are led to be believe that they all part of a single "village" down to including the registered trademark of DaVita on their paychecks. The impact of the single village mantra is exemplified by the fact that some managerial level employees are unsure what subsidiary they are actually employed by.

2.5.    DaVita describes itself as entity that "…we provided dialysis and administrative services and related laboratory services throughout the U.S. via a network of 2,753 outpatient dialysis centers in 46 states and the District of Columbia.,."[1]

3.6.    As of December 31, 2019, DaVita operated or provided administrative services through a network of 2,753 outpatient dialysis centers in the U.S. [2]  This includes 53 locations in Washington State.

4.7.    Plaintiff is an employee of Total and a member of the DaVita village and began working for Total over thirteen (13) years ago.

_____

[1] See DaVita, Inc.'s 2019 10k available at
https://www.sec.gov/ix?doc=/Archives/edgar/data/927066/000092706620000014/dva-12311910k.htm#s967C77CBE804541FAE5B78B764C16026

[2] *Id.*

SECOND AMENDED CLASS ACTION
COMPLAINTCOMPLAINT - 2

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

1    5.8.    DaVita encourages ~~their~~the employees of Total and the other entities under the

2    DaVita umbrella to believe that DaVita is a village community and repeatedly tells its employees

3    that it lives by "We said. We did." That is often repeated in various ways to its employees to

4    confirm that if DaVita says something to its employees, they can impose trust and confidence

5    that DaVita will do what it says.

6    9.    DaVita maintains and publishes an employee handbook titled "Teammate

7    Policies" which contains ~~certain~~the conditions of employment; the handbook states what is

8    expected of DaVita employees and, ~~inter alia,~~importantly, the handbook contains certain "pay

9    practices" that describe how DaVita ~~will compensate its~~ employees will be compensated for their

10    loyalty and work, under certain situations.

11    10.    By its own terms, the "Teammate Policies" contains "DaVita Rewards programs,

12    tools and resources, including our Village benefits, compensation and time off philosophies" that

13    govern DaVita's relationship with their at-will employees.

14    6.11.    Under section 4 of the Teammate Policies, title "Pay Practices," DaVita set out

15    how and when non-exempt employees will be paid as well as overtime and holiday practices.

16    7.12.    DaVita distributes the handbook through its StarLearning program that is set forth

17    as an educational system devised by DaVita to enhance its employees' knowledge. Nowhere

18    does the StarLearning system advise or even suggest that it is a system for an employee to waive

19    or relinquish their rights. This combined with the often repeated "We said. We did." or

20    ~~similiar~~similar variations, there is no reason for an employee to suspect that participating in

21    StarLearning will reduce their rights in any way.

22    8.13.    To the extent that DaVita claims that any statement by its employees, the

23    overwhelming majority of which have no legal training, knowledge, or experience, as to whether

24    or not something amounts to a contract, express or implied, is unreasonable. It is a narrow and

25    myopic view that is overwhelmed by the overall relationship which includes statements that its

26    employees can repose trust and confidence in DaVita.

HENRY & ~~DEGRAAFF~~DEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, ~~WASHINGTON~~ WA 98104
~~telephone (~~Tel# 206- -330-0595
~~fax (206) 400-7609~~

9.14.   Also, the Plaintiff, like the other members of the proposed class, is directed to acknowledge the various provisions that are no doubt prepared by lawyers for DaVita and presented by DaVita on a take it or leave it basis without any opportunity for any employee to negotiate any term. The prepared provisions set forth legal conclusions when DaVita knows itit's employees, like Plaintiff, lack sufficient legal training, knowledge or experience to understand the legal meaning or legal effect of provisions they are asked to sign. If anything, DaVita's efforts to have their employees sign provisions that suggest they are waiving any rights confirms DaVita's consciousness that its employees rely on the policies offered as part of their terms of employment, as they should.

15.     DaVita is able to identify each employee who has submitted an acknowledgment that they have read and understood the policies set forth in the Teammates Handbook. DaVita is also to identify and list any employees who have not submitted an acknowledgment that they have read and understood the policies.

10.16.  If the acknowledgement by its employees is viewed in isolation, it still must be considered with the words that accompany it in the acknowledgement. The acknowledgment includes the following:

..........I understand that I am governed the contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program, and I recognize that DaVita reserves the right to interpret, amend, modify, supersede or eliminate policies, practices or benefits (except at employment at will policies) described in these policies from time-to-time in its sole and absolute discretion. No oral amendment to any policy or benefit described herein shall be effective.

I understand that the Teammate Policies, the Code of Conduct and the DaVita Compliance Program and their contents are not intended to create any contractual or legal obligations, express or implied, between DaVita and its teammates; however, these policies do set forth the entire employment arrangement between me and DaVita with respect to the at-will nature of my employment relationship with DaVita……..

See ECF 12 at p.15.

17.     In informing its employees that "the[] policies [] set forth the entire employment arrangement between [employee] and DaVita with respect to the at-will nature of my

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

1   employment relationship with DaVita" Defendant informs its employees that the its policies,

2   including the policies found in the Teammate Policies, are terms of the employees employment

3   making the preceding admonition that the policies are not intended to "create any contractual or

4   legal obligation[]" inherently ambiguous and at best confusing.  Moreover, employees were

5   bound by the Teammate Policies and relied on corporate culture and management directives

6   were made to believe that Defendant was bound by the obligations that it set forth in the

7   Teammate Policies, the Code of Conduct, and the DaVita Compliance Program.

8       18.    None of the persons identified by Total as having knowledge of the claims raised

9   by the Plaintiff have claimed that the Disaster Relief Policy at issue in this case is not

10   enforceable as a contract or promise. They testified the expectations were that the policies would

11   be relied on by both employees and management.

12       19.    Defendant chooses to establish such Teammate Policies, the Code of Conduct and

13   the DaVita Compliance Program and makes them known to its employees, to enhance the

14   employment situation, to secure an orderly, cooperative, and loyal work force, and to give its

15   employees the peace of mind associated with job security and the conviction that he or she will

16   be treated fairly.

17       20.    Defendant, for reasons that had to do with defendant's own self-interests, created

18   an environment in which defendant's employee were led to believes that the Teammate Policies,

19   the Code of Conduct, and the DaVita Compliance Program purport to be fair, and would be

20   applied consistently and uniformly to each employee. Stated another way, the Teammate

21   Policies, the Code of Conduct, and the DaVita Compliance Program were instinct with an

22   obligation.

23       21.    Managerial employees acknowledge that the Teammate Policies handbook creates

24   mutual expectations between the employees and DaVita that the policies will be applied to their

25   relationship.

26       22.    "Integrity" is also ingrained in DaVita's corporate culture, and as with other

corporate mission statements, is pervasive. It is known as: "We say, what we believe, and we do

SECOND AMENDED CLASS ACTION
COMPLAINTCOMPLAINT - 5

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206- 330-0595
fax (206) 400-7609

1    what we say. We are trusted because we are trustworthy. In our personal, team, and

2    organizational values, we strive for alignment in what we say and do."

3        11.23.  Total created an atmosphere where Total employees are expected to abide by the

4    Teammate Policies, the Code of Conduct, and the DaVita Compliance Program and where

5    employees also justifiably expectmade to believe that Total will abide by those same policies.

6        12.24.  When considering thesethe above statements in the context of repeated

7    statementscommunications in writing and at corporate meetings with DaVita's management to

8    its employees that they can trust it, any effort by DaVita to disclaim that it does not owe the

9    benefits set forth in the TeammatesTeammate Policies handbook is unreasonable.    not

10   credible.

11       13.25.  There is no doubt that the Plaintiff, like the other members of the proposed class,

12   expected fair treatment from DaVita, with promises as outlined in the Teammate Policies

13   handbook to remain on the job at Total and to not seek employment elsewhere.

14       14.26.  Under the Compensation section, the handbook includedincludes a "Disaster

15   Relief Policy" that sets out DaVita's pay practices for non-exempt employees who miss work

16   during a "declared emergency, in whole or in part, and those non-exempt employees who can

17   and do work during a declared emergency.  natural disaster."

18       27.    Section 4.12 is titled the "Disaster Relief Policy."  The Disaster Relief Policy

19   provides foris a carefully crafted pay continuance duringscheme designed to encourage and

20   motivate DaVita Employees within an  area affected by a "declared emergency" to appear at

21   work rather than exercise their rights as employment-at-will employees to decide not to work as

22   a result of the unprecedented disruption to the lives of DaVita employees caused by COVID-19

23   including children out of school, grocery stores running low, spouses out of work, and family

24   members to care for..

25       28.    The "Disaster Relief Policy" states that an "emergency time frame" occurs when

26   there is a "declared emergency or natural disaster." The reference to natural disasters is followed

1  by a provision that states "prevents teammates from performing their regular duties and state

2  that: "[a] ".".

3      29.    A "declared emergency" occurs one of three ways: when said emergency or

4  natural disaster shall be.

5      a. "[is] proclaimed by either[] the President of the United States,;"

6      b.  a "state Governor or other elected official, or if;"

7      15.    c. "[by] local [DaVita] leadership (DVP/Palmer) deems it appropriate.  In

8  the event of a state or federally declared natural disaster, this policy provides information relative

9  to pay practices, work schedules and facility or business office coverage."."

10      30.    Under theDaVita's Disaster Relief Plan contains a section titled "Pay Practices

11  For Non-Exempt Teammates" where DaVita establishes the pay practicesthat its employees

12  affected by a "declared emergency or natural disaster" can expect to receive under the "Pay

13  Practices For Non-Exempt Teammates" includes:

14      16.a.   If a designated facility or business office is open during the emergency

15  time frame, teammates who report to their location and work their scheduled hours will

16  be paid premium pay for three emergency or natural disaster scenarios:all hours worked.

17  Unless state law requires otherwise, premium pay will be one-and-one-half (1.5) times

18  the teammate's base rate of pay.

19

20      31.    "Premium pay" is defined as one if  and one-half times regular pay, unless state

21  law dictates otherwise.

22      32.    The Emergency Time Frame and the facilities and businesses offices affected by

23  the "declared emergency" are to be identified by DaVita's local leadership and DaVita's

24  "Disaster Governance Council."

25

26

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206- -330-0595
fax (206) 400-7609

33.     On January 21, the first case of Covid 19 in the United States was confirmed in Snohomish County, Washington.  An American citizen had returned from Wuhan, China to the U.S., landing at Seattle–Tacoma International Airport on January 15, 2020.

34.     On January 31, 2020, the President of the United States declared the Covid 19 outbreak to be a public health emergency and set the first quarantines of Americans by the federal government in over 50 years. All flights from China to the U.S. were funneled to one of seven airports, including Seattle, Washington.

35.     On Feb. 26, 2020, the United Center For Disease Control (CDC) reports the first case of person-to-person transmission in the U.S., a Chicago woman who developed symptoms after visiting China.

36.     On February 28, a woman in her 50s who had recently returned from South Korea and who was an employee of the United States Postal Service at its Network Distribution Center facility in Federal Way, King County, tested positive for Covid 19.  DaVita's maintains a business office in Washington state located at Federal Way.

37.     Also, around March 13, 2020, the Defendant began closing parts or all of its business offices and employees began working remotely rather than at their offices.

38.     Until March 31, 2020 and beyond, the Covid 19 Crisis and the national emergency that it spawned prevented some, but not all DaVita teammates from performing their regular duties.

39.     During the Covid 19 crisis, thousands of Defendant's non-exempt employees ~~are unable to work because "a facility~~ , including the Plaintiff, worked their regularly scheduled hours, even though there was a "declared emergency" rather than utilize PTO time or simply forgo pay and exercise their rights as employment-at-will employees to shelter themselves and their families from the dangers presented by Covid 19.

SECOND AMENDED CLASS ACTION
~~COMPLAINT~~COMPLAINT - 8

HENRY & ~~DEGRAAFF~~DEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, ~~WASHINGTON~~ WA 98104
~~telephone (~~Tel# 206-~~-~~330-0595
~~fax (206) 400-7609~~

1  40.     Defendant never convened a meeting of the "Disaster Governance Counsel" to

2  identify the emergency time frame and offices and facilities affected as required by DaVita's

3  Disaster Relief Policy. Nor did Defendant pay Plaintiff or business office is closedthe thousands

4  of similarly situated employees the premium pay promised for the regularly scheduled hours they

5  worked during a declared emergency orthe time of the state of emergency.

6  41.     Instead, Defendant unilaterally and arbitrarily declared that the Disaster Relief

7  Policy did not apply to the Covid 19 Crisis because the Crisis did not prevent any of Defendants'

8  employees from performing their regular duties and its refusal and failure to identify an

9  emergency time frame.

10  a.42.   DaVita arrived at its position by asserting that the Disaster Relief Policy did not

11  apply because it did not prevent employees from performing their regular functions. If this

12  condition applies to emergency declarations as opposed to natural disaster,"disasters, it is

13  inconsistent with the specific provision of the Disaster Relief policy that promises premium pay

14  to those non-exempt employees will be paid for their regularly scheduled hours at regular

15  pay; who perform their scheduled hours. Additionally, DaVita has acknowledged that provision

16  even if applicable here, does not require all employees are prevented before the policy applies.

17  There were employees who had their location and work affected by the pandemic and therefore

18  the condition was satisfied.

19          b.       if "a facility or business office opens late or closes early a declared

20  emergency or natural disaster," non-exempt employees will be paid for their regularly

21  scheduled hours at regular pay, even if the employees are unable to work their full

22  schedules because of the emergency or natural disaster; and

23  43.     if "a facility or business office is open during the designated time frame"

24  employees who work their regularly scheduled hours will be paid premium pay.DaVita also

25  arrived at its position by asserting that there had been no emergency time frame declared. DaVita

26  arrived at this interpretation by reading the policy that only requires the emergency time frame to

SECOND AMENDED CLASS ACTION
COMPLAINTCOMPLAINT - 9

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

1  be identified as if it made the action discretionary by substituting declare for identify in the

2  policy.

3          44.     DaVita owed a duty of good faith in it's exercise of its responsibilities set forth in

4  the Teammate Policies. DaVita's failure to identify the emergency time frame was not in good

5  faith nor was its interpretation of the provision.

6                  c.      On March

7          17.     "Premium pay" is defined as one and one half times regular pay, unless state law

8  dictates otherwise.

9          18.     The clear import of the "Pay Practices For Non-Exempt Teammates" is that every

10  non-exempt DaVita employee who works his or her regularly scheduled hours during a declared

11  emergency will be paid premium pay.

12          19.     The "Pay Practices For Non-Exempt Teammates" is a method of attracting and

13  retaining employees whose knowledge and skills are valuable to the business profit model

14  developed by DaVita.  It is not altruism.

15          20.     DaVita's policy and practice is to provide actual notice to its employees before

16  any changes to its pay policies take effect.

17          21.     A national emergency was declared on January 31, 2020.

18          22.     The Plaintiff, who is a non-exempt employee, continued to work his regularly

19  scheduled hours for Defendants after the state of emergency was declared.

20          23.45.  Defendants did not pay Plaintiff premium pay for the regularly scheduled hours

21  he worked during the time of the state of emergency. Instead, DaVita attempted to later change

22  the terms of the Teammate Policies handbook to nowDisaster Relief Policy to exclude the

23  present emergency from those emergencies covered by the Disaster Relief Policy by a notice sent

24  out in Covid 19 crisis.  However, it is believed that DaVita employees were not provided notice

25  of change in the Disaster Relief Policy and solicited to acknowledge the policy change via the

26  Star Learning system until September, of 2020.

SECOND AMENDED CLASS ACTION
COMPLAINTCOMPLAINT - 10

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206- -330-0595
fax (206) 400-7609

46.     Whether or not ~~DaVita's~~Defendant's effort to unilaterally change ~~the~~its pay agreement with its non-exempt employees ~~is~~was effective, ~~there is a period of time before the attempted effort was made in which the Disaster Relief Policy applied and the premium pay was due to Plaintiff and all other non-exempt employees.~~ Defendant may not retroactively change its pay agreement with its employees after those employees have showed up for work, relying on DaVita's Disaster Relief Policy regarding premium pay. That change may only be made upon reasonable notice, with acceptance, and prospectively.

~~24.~~

## II.     PARTIES

~~25.~~47.  Plaintiff, Joseph J. Hesketh, III, is an individual who is a citizen of and resides in, the State of Washington.

48.     Defendant Total appears to be a California corporation although court disclosure filings made on its behalf are conflicting as to its state of incorporation.

~~26.~~49.  DaVita is a Delaware Corporation. Both list their principal place of business at the same address in Denver, Colorado. ~~Its~~ agent for service of process is Corporation Service Company, 1900 W. Littleton CO 80210.

## III.     JURISDICTION AND VENUE

~~27.~~50.  This Court has jurisdiction over Total and the Defendant Class Members who regularly conduct business in Kings County, Washington.

~~28.~~51.  Venue is proper in in King County Superior Court because Total and the Defendant Class Members transact business, in King County, Washington.

~~29.~~52.  The Defendant removed this action contending that this Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C.A. §1332(d). (ECF 1).

~~30.~~53.  Venue is proper under 28 U.S.C.A. §1391.

HENRY & ~~DEGRAAFF~~DEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, ~~WASHINGTON~~ WA 98104
~~telephone (~~Tel# 206- -330-0595
~~fax (206) 400-7609~~

**IV.**     **ALLEGATIONS COMMON TO PLAINTIFF AND THE CLASS AGAINST THE DEFENDANT AND THE CLASS OF DEFENDANTS.**

31.54.   Plaintiff and Class Members (hereinafter collectively "Plaintiff Class Members") are employed by Total and theDaVita as the umbrella corporation of the captive Defendant Class Members.

32.55.   Plaintiff Class Members provided services to theDaVita as the umbrella corporation of the captive Defendant Class Members after the national emergency declared on January 31, 2020.

33.56.   TheDaVita as the umbrella corporation of the captive Defendant Class Members failed to pay the Plaintiff Class Members premium time as promised in the Teammates Policy handbook.

34.57.   The Plaintiff Class Members are entitled to the premium pay for the hours they worked as they were promised.

35.58.   The amounts owed to the Plaintiff Class Members are liquidated amounts.

**V.**     **CLASS ALLEGATIONS AS TO PLAINTIFF CLASS**

36.59.   Plaintiff brings this complaint individually and on behalf of a class of all other persons similarly situated.

37.60.   The class is comprised of all non-exempt employees of theDaVita as the umbrella corporation of the captive Defendant Class Members who:

     a.     Worked their regularly scheduled hours for the Defendant Class Members on and afterduring from January 31, 2020;

     b.     Were not paid the premium pay equal to one and ½ times their base rate, for any work performed after the declaration of emergency. on January 31, 2020.

38.61.   Based on the number of clinics operated by theDaVita as the umbrella corporation of the captive Defendant Class Members in the United States, upon information and belief, the class is so numerous as to make it impracticable to join all members of the class of plaintiffs. On information and belief, the class is comprised of hundreds, if not thousands of individuals.

SECOND AMENDED CLASS ACTION COMPLAINTCOMPLAINT - 12

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

1    39.62.  There are questions of law and fact which are common to all members of the

2    Plaintiff Class, which questions predominate over any question affecting only individual class

3    members, the principal common issues are:

4         a.    -whether Plaintiff Class Members are entitled to be paid the premium pay

5         for the hours they worked for the Defendant Class Members since the declaration of an

6         emergency; and

7         b.    Whether the Plaintiff Class Members are entitled to prejudgment interest

8         on any amounts they are owed by the Defendant Class Members.

9    40.63.  The only individual questions concern the identification of class members and the

10   computation of the relief to be afforded each class member and can be determined by a

11   ministerial examination of the Defendant Class Members' records.

12   41.64.  Plaintiff's claims are typical of the claims of the Plaintiff Class Members. Upon

13   information and belief, the Defendant Class Members treated all of the Plaintiff Class Members

14   the same by failing to pay premium time since the declaration of an emergency.

15   42.65.  Plaintiff will fairly and adequately protect the interests of all class members in the

16   prosecution of this action. He is similarly situated with, and has suffered similar injuries as, the

17   members of the class he seeks to represent. He feels he has been wronged and wishes to obtain

18   redress of the wrong. To that end, plaintiff has retained counsel experienced in handling class

19   action suits involving claims as set forth in this complaint. Neither the named plaintiff nor his

20   counsel havehas any interest which might cause them not to vigorously pursue this action.

21   43.66.  The Defendant Class Members have and are acting in a uniform manner with

22   respect to the entire class and on grounds uniformly applicable to the class.

23   44.67.  A class action is superior to other available methods for the fair and efficient

24   adjudication of the controversy.

25   45.68.  The amounts involved on an individual basis make pursuit of individual actions

26   unlikely.

SECOND AMENDED CLASS ACTION
COMPLAINTCOMPLAINT - 13

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

1    46.69.  The concentration of the litigation concerning this matter in this Court is desirable

2    if the court.

3    47.70.  A failure of justice will result from the absence of a class action.

4    48.71.  Plaintiff Class Members were damaged by the conduct complained of, in that they

5    were not paid the amounts owed to them and that the Defendant Class Members promised to pay

6    them.

7    **VI.      CLASS ALLEGATIONS AS TO THE DEFENDANTS CLASS.**

8    49.72.  Plaintiff brings this complaint against the Defendant Total individually and on

9    behalf of a class of all others similarly situated. DaVita operates as a single unit (or what it calls

10   a village) for purposes of promises made to employees notwithstanding the creation of separate

11   entities. To the extent there are separate entities operating different locations, each have the same

12   interest as Total and DaVita and ultimately DaVita as the owner of any separate entities is

13   affected by the claims made in this action.

14   50.73.  The Defendant Class is comprised of all entities which are owned or controlled by

15   the DaVita who:

16          a.     –Has employees who are covered by the Teammates Policies

17   Handbookhandbook published by DaVita, Inc.

18          b.     -The employees worked for the Defendant Class Members on and after

19   January 31, 2020;

20          c.     -The Defendant Class Members did not pay premium pay, defined as 1.5

21   times their base rate, for any work performed since the declaration of the emergency.

22   51.74.  Based on the number of clinics operated by the Defendant Class Members in the

23   United States, upon information and belief, the class is so numerous as to make it impracticable

24   to join all members of the class of plaintiffs. On information and belief, the class is comprised of

25   tens if not hundreds of entities.

26          75.     ThereDaVita directs and controls the payroll and human resources functions and

policies for Total and each putative Defendant class member. Total and all putative defendant

SECOND AMENDED CLASS ACTION                    HENRY & DEGRAAFFDEGRAAFF, P.S.
COMPLAINTCOMPLAINT - 14                          787 Maynard Ave S.
                                               Seattle, WASHINGTON WA 98104
                                               telephone (Tel# 206- 330-0595
                                               fax (206) 400-7609

class members operate under the same policies and procedures and none of them have any

different policies or procedures in place.

52.76.  Given that Total and the putative Defendant class members operate the same

policies and procedures, there are questions of law and fact which are common to all members of

the Defendant Class, which questions predominate over any question affecting only individual

Defendant Class Members, the principal common issues are:

a.          whetherWhether Plaintiff Class Members are entitled to be paid premium

time for the hours they worked for the Defendant Class Members since the declaration of

an emergency.

b.          Whether the Plaintiff Class Members are entitled to prejudgment interest

on any amounts they are owed by the Defendant Class Members.

53.77.  The only individual questions concern the identification of Defendant Class

Members and the computation of the relief that the defendant class members may be liable for

and can be determined by a ministerial examination of the Defendant Class Members'

electronically stored information that is readily available to Total as a result its employees'

access to and use of the same software for Total and all of the putative defendant class members.

54.78.  Total's position or defenses to the claims are typical of the position or defenses of

the Defendant Class Members. Upon information and belief, the Defendant Class Members

treated all of the Plaintiff Class Members the same by failing to pay premium time since the

declaration of an emergency as directed by DaVita.

55.79.  Defendant Total will fairly and adequately protect the interests of all class

members in the defense of this action. It is similarly situated to and provides its employees

DaVita's company policies as set forth in the TeammatesTeammate Policies Handbookhandbook

and all of the Defendant Class Members treat its employees in accordance with its provisions.

To that end, Defendant Total is likely to retain counsel experienced in handling class action suits

involving claims as set forth in this complaint. Neither Total nor its counsel will have any

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206- 330-0595
fax (206) 400-7609

interest which might cause them not to vigorously defend this action and the interests of the

Defendant Class Members.

56.80.  The Defendant Class Members have and are acting in a uniform manner with

respect to the entire class and on grounds uniformly applicable to the class.

57.81.  A class action is superior to other available methods for the fair and efficient

adjudication of the controversy.

58.82.  The Defendant Class Members can more economically defend the claims rather

than defend tens if not hundreds of individual actions.

59.83.  The concentration of the litigation concerning this matter in this Court is desirable

if the court.

60.84.  A failure of justice will result from the absence of a class action.

## **COUNT I – BREACH OF CONTRACT**

61.85.  The Plaintiff incorporates the foregoing paragraphs.

86.     The Plaintiff Class Members are non-exempt at-will employees of the Defendant

Class Members, who entered into a contract with the Defendant Class Members foras part of

their employment and were offered the Teammate Policies handbook that governed the terms of

their compensation.

62.87.  The Plaintiff's Class accepted those terms of compensation by accepting

employment, working in compliance with the terms and conditions in the Teammate Policies

handbook and continuing to work, including the wages to be paid for their services.

63.88.  The contract set forth the rate of pay for the Plaintiff Class Members if there was

an emergency declared.

64.89.  The Defendant Class Members have breached their agreements with the Plaintiff

Class Members by failing to pay them premium time for their work since the declaration of an

emergency.

65.90.  The Plaintiff Class Members have fully performed their obligations under the

parties' agreement for the payment of wages promised.

SECOND AMENDED CLASS ACTION
COMPLAINTCOMPLAINT - 16

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206- -330-0595
fax (206) 400-7609

1  66.91.  The Plaintiff Class Members have been damaged by the Defendant Class

2  Members breach.

3  67.92.  The Plaintiff Class Members are entitled to damages for the Defendant Class

4  Members breach.

5  68.93.  The Plaintiff Class Members are entitled to prejudgment interest on any liquidated

6  amount of damages.

7  **Wherefore,** Plaintiff and Class Members pray that this court:

8  A.  Certify this case as a class action with the named Plaintiff as class representative

9  and his attorneys as counsel on behalf of the class described herein;

10  B.  Certify a class of Defendants with the named Defendant as the representative of

11  the Defendant Class;

12  C.  Order appropriate compensatory damages in an amount to be determined at trial

13  for the Plaintiff and the Class in excess of $75,000;

14  D.  Award attorney's fees and costs if allowed by law;

15  E.  Award prejudgment interest on any award; and

16  F.  Provide such other or further relief as the Court deems appropriate.

17  **COUNT III – GOOD FAITH AND FAIR DEALING**

18  94.     The Plaintiff incorporates the foregoing paragraphs.

19  95.     The Defendant and the Defendant Class Members have breached the implied duty

20  of good faith and fair dealing present in all contracts by refusing to cooperate and perform its

21  obligations to identify the emergency time frame so that employees could receive the benefit of

22  the bargain.

23  96.     The Defendant and the Defendant Class Members offered to pay under its

24  Disaster Relief Policy in the Teammate Policies handbook that every employee received upon

25  employment and annually renewed affirmatively, but they failed to perform their ministerial

26  obligation to identify the emergency time frame so employees would receive the premium pay

promised.

SECOND AMENDED CLASS ACTION                    HENRY & DEGRAAFFDEGRAAFF, P.S.
COMPLAINTCOMPLAINT - 17                         787 Maynard Ave S.
                                                Seattle, WASHINGTON WA 98104
                                                telephone (Tel# 206-330-0595
                                                fax (206) 400-7609

1    97.    Thus, the Disaster Pay offer in the Teammates Policies handbook was therefore

2    made in bad faith and performed in bad faith. By failing to abide by the offer's objective

3    standard of an emergency declaration, and subjectively refusing to identify the emergency time

4    frame and failing to pay the premium pay promised to the employees.

5    98.    Additionally, Total made no effort to inform employees that they would not

6    identify an emergency time frame as promised.

7    99.    Total obtained the benefits of the employees performing their regular duties based

8    on the promise of premium pay but they were never paid.

9    100.    Total acted in bad faith by making a unilateral change to the Disaster Relief

10   Policy by claiming in bath faith that the policy changed retroactively.

11   101.    Plaintiff and the Plaintiffs Class Members are entitled to compensatory damages

12   as a result of failing to perform in good faith and prejudgment interest since they are liquidated

13   amounts owed.

14                      **COUNT II – PROMISSORY ESTOPPEL**

15   69.102.    The Plaintiff incorporates the foregoing paragraphs.

16   70.103.    Defendant induced the Plaintiff Class Members to stay on the job and not

17   to seek other employment with the promise that DaVita with corporate culture based on "We

18   said. We did."

19   71.104.    DaVita asked the Plaintiff Class Members to abide by the Teammate

20   Policies, the Code of Conduct, and the DaVita Compliance Program as part of their employment.

21   72.105.    DaVita should have reasonably expected that its promise would cause

22   Plaintiff and the Plaintiff Class members to change their position and comply with the policies

23   and continue employment during an emergency.

24   73.106.    The Plaintiff and the Plaintiff Class Members did change their position

25   and continued to work during an emergency.

26   74.107.    The Plaintiff and the Plaintiff Class Members relied on DaVita's promises

and were justified in relying on DaVita's promises.

75.108.　　　It would be unjust to not enforce DaVita's promise to the Plaintiff and the Plaintiff Class Members and any injustice can be avoided only if the promise is enforced.

76.109.　　　The Defendant and the Defendants' Class are estopped from refusing to fulfill their promise to pay the Plaintiff and the Plaintiff Class Members the emergency pay they were promised.

77.110.　　　The Defendant and the Defendants' Class failed to fulfill their promise to pay the Plaintiff and Plaintiff's Class Members premium time for their work since the declaration of an emergency.

78.111.　　　The Plaintiff Class Members have fully performed their obligations under the Teammate Policies, the Code of Conduct, and the DaVita Compliance Program agreement for the payment of wages promised.

79.112.　　　The Plaintiff Class Members have been damaged by the Defendant Class Members failure to fulfill their promise.

80.113.　　　The Plaintiff Class Members are entitled to damages for the Defendant Class Members failure to fulfill their promise.

81.114.　　　The Plaintiff Class Members are entitled to prejudgment interest on any liquidated amount of damages determined to be owed.

**Wherefore,** Plaintiff and Class Members pray that this court:


A. Certify this case as a class action with the named Plaintiff as class representative and his attorneys as counsel on behalf of the class described herein;

B. Certify a class of Defendants with the named Defendant as the representative of the Defendant Class;

C. Order appropriate compensatory damages in an amount to be determined at trial for the Plaintiff and the Class in excess of $75,000;

D. Award attorney's fees and costs if allowed by law;

HENRY & DEGRAAFFDEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, WASHINGTON WA 98104
telephone (Tel# 206-330-0595
fax (206) 400-7609

E.  Award prejudgment interest on any award; and

F.  Provide such other or further relief as the Court deems appropriate.

### COUNT III - UNJUST ENRICHMENT

~~82.~~115.        The Plaintiff incorporates the foregoing paragraphs.

~~83.~~116.        If Plaintiff cannot establish a contract that entitles Plaintiff and the Plaintiff Class Members to the relief sought under Count I, Plaintiff alternatively asserts a claim that the Defendant and the Defendants Class have been unjustly enriched.

~~84.~~117.        Based on Defendant and the Defendant Class ~~Members~~Members' own Teammate Policies, Plaintiff and the Plaintiff Class Members were entitled to be paid premium pay for working during a national emergency.

~~85.~~118.        Defendant and the Defendant Class Members failed to pay Plaintiff and the Plaintiff Class Members the premium pay they were entitled to and instead retained those monies.

~~86.~~119.        Defendant and the Defendant Class Members benefited at the expense of the Plaintiff and the Plaintiff Class Members by receiving their dedication and commitment to provide services during a national emergency.

~~87.~~120.        Defendant and the Defendant Class Members were unjustly enriched by its refusal to pay premium pay.

~~88.~~121.        Defendant and the Defendant Class Members should be required to disgorge the amounts by which they were unjustly enriched.

~~89.~~122.        Plaintiff and the Plaintiff Class Members have suffered and are entitled to recover damages along with prejudgment interest.

**Wherefore,** Plaintiff and Class Members pray that this court:

A.  Certify this case as a class action with the named Plaintiff as class representative and his attorneys as counsel on behalf of the class described herein;

B.  Certify a class of Defendants with the named Defendant as the representative of the Defendant Class;

HENRY & ~~DEGRAAFF~~DEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, ~~WASHINGTON~~WA 98104
~~telephone (~~Tel# 206- 330-0595
~~fax (206) 400-7609~~

C.  Order appropriate compensatory damages and disgorgement in an amount to be determined at trial for the Plaintiff and the Class in excess of $75,000;

D.  Award attorney's fees and costs if allowed by law;

E.  Award prejudgment interest on any award; and

F.  Provide such other or further relief as the Court deems appropriate.

Respectfully submitted,

Dated this ~~18th~~___ of ~~December 2020~~April 2021.

*/s/ Christina L Henry*
Christina L Henry, WSBA# 31273
Counsel for Plaintiff
HENRY & DEGRAAFF. PS
787 Maynard Ave S
Seattle, WA 98104
Tel# 206-330-0595
Fax# 206-400-7609
*chenry@hdm-legal.com*

Scott C. Borrison
(Pro Hac Vice)
BORISON FIRM, LLC
1900 S. Norfolk Rd., Suite 350
San Mateo, CA 94403
Tel# 301-620-1016
Fax# 301-620-1018
*scott@borisonfirm.com*

J. Craig Jones
(Pro Hac Vice)
JONES & HILL, LLC
131 Highway 165 South
Oakdale, LA 71463
Tel# 318-335-1333
Fax# 318-335-1934
*craig@joneshilllaw.com*

Craig Hill
(Pro Hac Vice)
JONES & HILL, LLC
131 Highway 165 South
Oakdale, LA 71463
Tel# 318-335-1333
Fax# 318-335-1934
*chill@joneshilllaw.com*

SECOND AMENDED CLASS ACTION ~~COMPLAINT~~COMPLAINT - 21

HENRY & ~~DEGRAAFF~~DEGRAAFF, P.S.
787 Maynard Ave S.
Seattle, ~~WASHINGTON~~ WA 98104
~~telephone (~~Tel# 206-~~330-0595
fax (206) 400-7609~~