1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   JOSEPH J. HESKETH III,                    CASE NO. C20-1733JLR

11                          Plaintiff,         ORDER

12           v.

13   TOTAL RENAL CARE INC.,

14                          Defendant.

15                          **I.      INTRODUCTION**

16        Before the court are Defendant Total Renal Care Inc.'s ("TRC") motion for

17   judgment on the pleadings (MJOP (Dkt. # 22); Reply (Dkt. # 32)) and Plaintiff Joseph J.

18   Hesketh III's motion to amend his complaint (MTA (Dkt. # 33)).  Mr. Hesketh opposes

19   TRC's motion.  (Resp. (Dkt. # 31).)  Having considered the motions, the parties'

20   submissions in support of and in opposition to the motions, the relevant portions of the

21   //

22   //

1   record, and the applicable law,[1] the court GRANTS in part and DENIES in part TRC's

2   motion, GRANTS Mr. Hesketh leave to amend his amended complaint, and DENIES Mr.

3   Hesketh's motion to amend as moot.

4                                **II.   BACKGROUND**

5          Mr. Hesketh is an employee of TRC, which is a subsidiary of DaVita, Inc.

6   ("DaVita").  (Am. Compl. (Dkt. # 19) ¶¶ 2-3.)  DaVita operates or provides

7   administrative services for "a network of 2,753 outpatient dialysis centers" throughout

8   the United States.  (*Id.* ¶ 3.)  DaVita "encourages their employees to believe that DaVita

9   is a village community" and preaches a "We said. We did." mantra to allegedly "confirm

10  that if DaVita says something to its employees, they can impose trust and confidence that

11  DaVita will do what it says."  (*Id.* ¶ 5.)

12         DaVita publishes, maintains, and distributes an employee handbook titled

13  "Teammate Policies," which contains expectations and policies for DaVita employees.

14  (*Id.* ¶¶ 6-7; Zuckerman Decl. (Dkt. # 12) ¶ 2, Ex. 1 ("Teammate Policies").)  At the

15  beginning, in a section labeled "Important," the handbook states:

16         The language used in these policies and any verbal statements made by
           management are not intended to constitute a contract of employment, either
17         expressed or implied . . . .  The Teammate Policies have been provided to
           offer guidance in handling many issues, but the policies also allow for
18         latitude in their application to individual circumstances or as the needs of our
           business may warrant.  Except for the policy of at-will employment, any
19         policy may be canceled or modified at any time, at DaVita's sole discretion,
           with or without prior notice.

20  //

21  _____

22         [1] Neither party requests oral argument (*see* MJOP at 1; Resp. at 1), and the court does not
    find oral argument necessary here, *see* Local Rules W.D. Wash. LCR 7(b)(4).

(Teammate Policies at 1 (all caps removed).)  DaVita and TRC require employees to annually sign an acknowledgement that they have read and will adhere to the Teammate Policies.  (Am. Compl. ¶¶ 9-10; Zuckerman Decl. ¶ 5, Ex. 4 ("Acknowledgement").)  The acknowledgement provides, in relevant part:

> . . . I recognize that DaVita reserves the right to interpret, amend, modify, supersede or eliminate policies, practices or benefits . . . described in these policies from time-to-time in its sole and absolute discretion . . . I understand that the Teammate Policies . . . [is] not intended to create any contractual or legal obligations, express or implied, between DaVita and its teammates[.]

(Acknowledgement at 2.)  Mr. Hesketh signed his acknowledgement of the most recent Teammate Policies handbook in January 2020.  (*Id.* at 1.)

The Teammate Policies handbook contains a Disaster Relief Policy that "provides for pay continuance during an emergency time frame when a declared emergency or natural disaster prevents teammates from performing their regular duties."  (Am. Compl. ¶¶ 14-18; Zuckerman Decl. ¶ 3, Ex. 2 ("Disaster Relief Policy").)  What constitutes an "emergency time frame," as well as the affected facility, is identified "on a case-by-case basis by local leadership . . . and the Disaster Governance Council, dependent on the severity of the disaster and location."  (Disaster Relief Policy at 2.)  If a designated facility is open during the emergency time frame, employees working their scheduled hours will be paid "premium pay," or 1.5 times the base rate of pay.  (*Id.*)  The Disaster Relief Policy also specifies:

> The language used in this policy is not intended to constitute a contract of employment, either express or implied, to give teammates any additional rights to continued employment, pay or benefits, or to otherwise change DaVita's policy of at-will employment.

1 (*Id.*)

2      Mr. Hesketh alleges that a national emergency was declared on January 31, 2020,

3 due to the COVID-19 pandemic and that he continued to work his regularly scheduled

4 hours afterwards. (Am. Compl. ¶¶ 21-22.) However, TRC did not provide him premium

5 pay. (*Id.* ¶ 23.) In September 2020, DaVita sent a notice to "exclude the present

6 emergency from those emergencies covered by the Disaster Relief Policy," stating that it

7 "does not apply to the COVID-19 crisis" because it "applies only when teammates are

8 unable to perform their regular duties." (*Id.* ¶ 23; Zuckerman Decl. ¶ 4, Ex. 3,

9 ("COVID-19 Notice") at 1.) Moreover, local leadership had not declared an emergency

10 time frame or specific emergency-affected facilities. (COVID-19 Notice at 1.)

11      Mr. Hesketh brought the instant suit against TRC on October 22, 2020, in state

12 court, and TRC removed the action. (*See* Compl. (Dkt. # 1-1); Not. of Removal (Dkt.

13 # 1).) TRC subsequently brought this motion for judgment on the pleadings under

14 Federal Rule of Civil Procedure 12(c). (*See* MJOP.)

15                **III.   ANALYSIS**

16      Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are

17 closed but within such time as not to delay the trial, any party may move for judgment on

18 the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the

19 moving party clearly establishes on the face of the pleadings that no material issue of fact

20 remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach*

21 *Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The standard for

22 dismissing claims under Rule 12(c) is "substantially identical" to the Rule 12(b)(6)

1    standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *Chavez v. United*

2    *States*, 683 F.3d 1102, 1008 (9th Cir. 2012).

3        To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

4    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5    face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570

6    (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

7    allows the court to draw the reasonable inference that the defendant is liable for the

8    misconduct alleged."  *Id*.  Although not a "probability requirement," this standard asks

9    for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The court

10   construes the complaint in the light most favorable to the nonmoving party, *Livid*

11   *Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and

12   must accept all well-pleaded allegations of material fact as true, *see Wyler Summit P'ship*

13   *v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, the court need not

14   accept as true a legal conclusion presented as a factual allegation.  *Iqbal*, 556 U.S. at 678.

15       The court may consider materials attached to or incorporated by reference in the

16   pleadings.[2]  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *World Trading*

17   *23, Inc. v. Edo Trading, Inc.*, No. 2:12-cv-10886-ODW(PJWx), 2013 WL 1210147, at *1

18   (C.D. Cal. Apr. 11, 2013).  The court may properly take judicial notice of documents

19   whose authenticity is not contested and upon which the complaint has necessarily relied,

20   //

21

22   [2] If a party presents "matters outside the pleadings," "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  For this reason, the court does not consider any material outside of the pleadings or not incorporated therein.

ORDER - 5

1    even when they are not physically attached to the complaint.  *Chandola v. Seattle Hous.*

2    *Auth.*, No. C13-557 RSM, 2014 WL 4540024, at *1 (W.D. Wash. Sept. 11, 2014).  A

3    complaint necessarily relies on a document if (1) the complaint refers to the document;

4    (2) the document is central to the claim; and (3) no party questions the authenticity of the

5    document.[3]  *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2012).

6        Mr. Hesketh brings this instant putative class action alleging three claims:  (1)

7    breach of contract based on the Disaster Relief Policy; (2) promissory estoppel based on

8    the alleged promises within that policy; and (3) unjust enrichment.  (Am. Compl.

9    ¶¶ 61-89.)  TRC moves for judgment on the pleadings on all three claims.  (MJOP at 1.)

10   Accordingly, the court addresses each claim in turn.

11   **A.    Breach of Contract**

12       Mr. Hesketh first alleges that TRC breached its contract with him for premium pay

13   during declared emergencies, as laid out by the Disaster Relief Policy in the Teammates

14   Policies handbook.  (Am. Compl. ¶¶ 62-65.)  This claim is predicated on the contention

15   that the Disaster Relief Policy is a contract.  (*See id.* ¶¶ 62-63.)  TRC argues that the

16   Disaster Relief Policy does not give rise to a contract, and thus, Mr. Hesketh's claim fails

17   as a matter of law.  (MJOP at 9.)  The court agrees.

18   //

19   //

20

---

[3] Mr. Hesketh refers to a motion to strike certain documents attached to TRC's answer.
21   (*See* Resp. at 11 n.4 (citing Mot. to Strike (Dkt. # 26).)  However, he withdrew that motion and makes no further argument about those documents in his response; indeed, he relies on those
22   same documents.  (*See* Not. of Withdrawal (Dkt. # 30); Resp. at 2, 7, 11, 13, 16.)  Thus, Mr. Hesketh seemingly acknowledges that those documents are properly before the court.

1      Under Washington law, policies within an employee handbook rather than a

2   formal employment contract may nonetheless be binding.  *See Thompson v. St. Regis*

3   *Paper Co.*, 685 P.2d 1081, 1087 (Wash. 1984).  This rule "rests on the principle that by

4   using a manual or handbook, an employer secures promises from the employees which

5   create a loyal, orderly and cooperative work force, such that the employer should be

6   equally bound to its promises."  *Drobny v. Boeing Co.*, 907 P.2d 299, 302 (Wash. Ct.

7   App. 1995).  Thus, policies within a handbook may be binding in two situations.

8   *Thompson*, 685 P.2d at 1087.  First, the policy creates an implied contract through the

9   traditional requisites of contract formation, offer, and consideration.  *Id.*  Second, the

10   policy creates "an atmosphere of job security and fair treatment with promises of specific

11   treatment in specific situations and an employee is induced thereby to remain on the job

12   and not actively seek other employment."  *Id.*  This second avenue is referred to as the

13   promissory estoppel exception because it is based on an equitable theory of justifiable

14   reliance.  *See Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1158 (W.D. Wash. 2014).

15      However, "statements made in employee handbooks are not binding if the

16   employer provides an appropriate written disclaimer."  *Id.* at 1155.  An employer

17   "escape[s] obligation if it states 'in a conspicuous manner' in the written materials that

18   'nothing contained therein is intended to be part of the employment relationship' . . . or if

19   the employer specifically reserves a right to modify the policies, or writes them 'in a

20   manner that retains discretion to the employer.'"  *Quedado v. Boeing Co.*, 276 P.3d 365,

21   369 (Wash. Ct. App. 2012) (quoting *Thompson*, 685 P.2d at 1088); *see also Swanson v.*

22   *Liquid Air Corp.*, 826 P.2d 664, 672 (Wash. 1992) (requiring at minimum, statement that

1    nothing in handbook is intended to be part of employment relationship and that

2    statements are general statements of policy).  An effective disclaimer must be

3    communicated to the employee, and it cannot be later negated by inconsistent or

4    contradictory employer representations or practices.  *Swanson*, 826 P.2d at 673-75.

5          Courts have approved of disclaimers that use clear and direct language disavowing

6    the handbook as part of the employment contract while retaining discretion or authority

7    to act apart from the handbook on behalf of the employer.[4]  In *Quedado*, the following

8    disclaimer rendered the policies nonbinding:

9           This  process  instruction  does  not  constitute  a  contract  or  contractual
            obligation,  and  the  company  reserves  the  right,  in  its  sole  discretion,  to
10          amend, modify, or discontinue its use without prior notice, notwithstanding
            any person's acts, omissions, or statements to the contrary.

11   276 P.3d at 371-72.  On the other hand, simply stating that the policies lay out guidelines

12   without explicitly addressing the policy's impact on the employment contract is

13   insufficient.  In *Mikkelsen v. Public Utility District No. 1 of Kittitas County*, 404 P.3d 464

14   (Wash. 2017), the disclaimer that "[t]he rules set out here are intended only as guidelines,

15   and do not give any employee a right to continued employment or any particular level of

16   corrective action" was not clear enough about whether it modified the at-will

17   employment relationship.  *Id.* at 477.  The court pointed to another disclaimer that was

18   //

19   //

20

21          [4] The court recognizes that this line of cases involving disclaimers focuses largely on
     whether handbooks have modified the at-will employment relationship, which is not at issue
22   here.  However, Mr. Hesketh has not provided any argument that this authority would not be
     applicable to the facts as alleged here.  (*See generally* Resp.)

1   "far more explicit," highlighting its statements that the handbook does not "constitute a

2   contractual arrangement" and its reiteration that "employment is 'at will.'"  *Id.*

3           Applied here, the language contained in the Teammate Policies handbook rise to

4   the level of a clear and conspicuous disclaimer of contractual rights that is effective as a

5   matter of law.  Like in *Quedado*, the handbook expressly disavows any contractual rights,

6   stating "[t]he language . . . [is] not intended to constitute a contract of employment, either

7   expressed or implied."  (Teammate Policies at 1); *see* 276 P.3d at 371.  This express

8   disavowal is repeated in the Disaster Relief Policy, specifically instructing that the policy

9   "is not intended to constitute a contract of employment, either express or implied, [or] to

10  give teammates any additional rights to continued employment [or] pay or benefits."

11  (Disaster Relief Policy at 2.)  The disclaimer then reiterates the discretion that the

12  employer retains, noting that "any policy may be canceled or modified at any time, at

13  DaVita's sole discretion, with or without prior notice."  (*Id.*)  Lastly, it retains the

14  authority to act apart from the Teammate Policies, explaining that "the policies . . . allow

15  for latitude in their application to individual circumstances or as the needs of our business

16  may warrant."  (*Id.*)

17          These statements are again featured in the acknowledgment that employees sign

18  upon their annual review of the policies.  (*See* Acknowledgement at 2 (Teammate

19  Policies is "not intended to create any contractual or legal obligations, express or

20  implied" and "DaVita reserves the right to interpret, amend, modify, supersede or

21  eliminate policies, practices or benefits . . . from time-to-time in its sole and absolute

22  discretion").  Mr. Hesketh signed this acknowledgment, evidencing that the disclaimer

ORDER - 9

had been communicated to him (Am. Compl. ¶¶ 9-10; Acknowledgement at 1), and he offers no allegations of inconsistent or contradictory employer representations or practices that could negate this effective disclaimer (*see* Am. Compl.).[5]

Mr. Hesketh does not contend that the disclaimers are legally insufficient. (*See* Resp.) Instead, his only argument is that the disclaimers are "not relevant" because they only reference DaVita and not TRC. (Resp. at 6-9, 16-17.) Mr. Hesketh appears to have missed the forest for the trees. Pushing aside the undisputed fact that TRC is a wholly owned subsidiary of DaVita (*see* Resp. at 1 n.1; MJOP at 2), if the disclaimers do not apply to TRC because they only mention DaVita, then it is unclear how the Teammate Policies and the Disaster Relief Policy—which underpin Mr. Hesketh's entire action— apply to TRC because both documents only mention DaVita. (*See* Teammate Policies; Disaster Relief Policy; Acknowledgement.) In fact, even Mr. Hesketh mentions only DaVita in his allegations regarding the policy. (*See, e.g.*, Am. Compl. ¶ 6 ("DaVita maintains and publishes an employee handbook . . . ."), ¶ 16 ("DaVita establishes the pay practices for three emergency or natural disaster scenarios.").) Assuming Mr. Hesketh still contends that the Disaster Relief Policy applies to TRC, as he must to sustain any of his claims, the court rejects his proposed parsing of the handbook.

Mr. Hesketh seems to suggest that an effective disclaimer may still be insufficient to excuse obligations of "promises of specific treatment in specific situations." (*See*

---

[5] It is unclear whether Mr. Hesketh is arguing that the handbook is an explicit contract, as he relies only on the *Thompson* framework. (*See generally* Resp.; Reply at 3 ("[TRC] is unable to discern any arguments in support of a breach of express contract claim.").) Regardless, an effective disclaimer applies with equal force to an express contract claim.

1   Resp. at 9.)  In other words, he proposes that in the promissory estoppel exception, a

2   disclaimer cannot excuse an employer's obligations.  The court finds this unavailing for

3   two reasons.  First, courts have recognized the effect of disclaimers even in the

4   promissory estoppel context.  *See, e.g.*, *Flores v. Walmart Stores, Inc.*, No. 11-CV-0334-

5   TOR, 2012 WL 5929957, at *6-7 (E.D. Wash. Nov. 27, 2012).  The *Flores* court relied

6   on an effective disclaimer to conclude that the policy "did not constitute a promise of

7   specific treatment in specific situations."  *Id.*  Mr. Hesketh offers no case law to the

8   contrary, and the court is not aware of any.  (*See* Resp.)

9         Second, even if the disclaimer was insufficient, the Disaster Relief Policy is too

10   discretionary as a matter of law to constitute a promise of specific treatment in a specific

11   situation.  A "supposed promise" may be illusory if it is "discretionary on the part of the

12   promisor."  *Stewart v. Chevron Chem. Co.*, 762 P.2d 1143, 1145 (Wash. 1988).  In

13   *Quedado*, the court looked at a policy that allowed the employer to determine on a

14   case-by-base basis whether to deviate from the "promised" progressive discipline.  276

15   P.3d at 371.  Because of this discretion, the court held as a matter of law that the manual

16   did not provide a promise of specific treatment in a specific circumstance.  *Id.*  The same

17   is true here.  The Disaster Relief Policy is not automatically triggered upon the

18   proclamation of an emergency or natural disaster by government officials.  (Disaster

19   Relief Policy at 1.)  Instead, the company must determine the "affected facility,"

20   "business office," and the "emergency time frame" during which premium pay applies.

21   (*Id.* at 2.)  These determinations are made "on a case-by-case basis" and are "dependent

22   on the severity of the disaster and location."  (*Id.*)  These statements give the employer

1    discretion in applying the Disaster Relief Policy and thus do not provide a promise of

2    specific treatment in a specific circumstance as a matter of law.[6]

3          Because the Teammate Policies handbook and the Disaster Relief Policy contain

4    clear and conspicuous disclaimers that disavow any legal obligations on the part of TRC,

5    Mr. Hesketh has not stated a breach of contract claim sufficient to entitle him to relief.[7]

6    Thus, the court grants TRC's motion for judgment on the breach of contract claim.

7    **B.    Promissory Estoppel**

8          TRC next challenges Mr. Hesketh's promissory estoppel claim.  (MJOP at 21-23.)

9    It is unclear whether Mr. Hesketh seeks to pursue an independent promissory estoppel

10   claim or simply the promissory estoppel exception under the *Thompson* framework to

11   establish the Disaster Relief Policy as binding.  (*See* Resp. at 17-18.)  In his opposition,

12   he refers only to "the promissory estoppel exception to at-will employment" and cites no

13   authority regarding a standalone claim.  (*See id.* at 17.)  To the extent Mr. Hesketh is only

14   pursuing the promissory estoppel exception, the court has already detailed the

15   deficiencies associated with that argument.  *See supra* § III.A.  Those deficiencies

16   similarly doom any standalone promissory estoppel claim.  Promissory estoppel requires

17

18          [6] Moreover, Mr. Hesketh must allege that he justifiably relied upon the promise.  *See*

19   *Bulman v. Safeway, Inc.*, 27 P.3d 1172, 1174-75 (Wash. 2001).  His sole allegation states that he
     "continued to work his regularly scheduled hours."  (Am. Compl. ¶ 22.)  This allegation leaves
     unclear whether he relied on the Disaster Relief Policy in doing so.  *See Baker*, 994 F. Supp. 2d

20   at 1159 (requiring employee to show "reliance on the specific provision at issue").

21          [7] The court does not reach the issue of the conditions precedent.  (*See* MJOP at 13-14;
     Resp. at 13-16.)  Moreover, Mr. Hesketh does not analyze the language in the Disaster Relief

22   Policy and provides no argument on whether he was "prevent[ed] . . . from performing [his]
     regular duties."  (*See* Disaster Relief Policy at 1; Resp.)

1    "the existence of a promise" that is "clear and definite." *Havens v. C&D Plastics, Inc.*,

2    876 P.2d 435, 443 (Wash. 1994).  Mr. Hesketh relies only on the statements within the

3    Teammate Policies handbook to establish the requisite promise, but as discussed above,

4    those statements do not constitute a clear and definite promise due to the provisions that

5    make performance discretionary.  *See Spooner v. Reserve Life Ins. Co.*, 287 P.2d 735,

6    738 (Wash. 1955).  Accordingly, the court grants TRC's motion as it relates to Mr.

7    Hesketh's promissory estoppel claim.

8    **C.    Unjust Enrichment**

9           Finally, TRC argues that Mr. Hesketh fails to plead facts that could state an unjust

10   enrichment claim.  (MJOP at 24.)  Unjust enrichment is an equitable remedy that allows

11   plaintiffs to recover "the value of [any] benefit retained absent any contractual

12   relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d

13   1258, 1262 (Wash. 2008).  To establish unjust enrichment, Mr. Hesketh must allege that

14   "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense,

15   and (3) the circumstances make it unjust for the defendant to retain the benefit without

16   payment." *Id.*  TRC contends that because the Teammate Policies handbook and Disaster

17   Relief Policy show that Mr. Hesketh "was never entitled to premium pay," TRC did not

18   receive any benefit at his expense.  (MJOP at 24.)  The court disagrees.

19          "The concept of equitable jurisdiction exists to permit the court to do justice when

20   the letter of the law either does not cover the situation or may tend to dictate an

21   inequitable result." *Kingston v. Int'l Bus. Machs. Corp.*, 454 F. Supp. 3d 1054, 1062

22   (W.D. Wash. 2020).  Thus, even if TRC is correct that the policies as written do not

1    entitle Mr. Hesketh to premium pay, he has pleaded sufficient facts upon which a court

2    could draw the reasonable inference that denying premium pay under the pandemic

3    circumstances is inequitable, and the retention of the benefits conferred by Mr. Hesketh

4    through his continued work during the pandemic without the corresponding premium pay

5    is equally inequitable.  *See id.*; (Am. Compl. ¶¶ 21-23, 85-87.)  TRC offers no authority

6    to support dismissal under these circumstances.  (*See* MJOP at 24; Reply at 12.)

7    Accordingly, the court denies TRC's motion for judgment regarding the unjust

8    enrichment claim.

9    **D.    Leave to Amend**

10        The standard for granting leave to amend under Rule 12(c) is identical to that

11   under Rule 12(b)(6).  *Pantastico v. Dep't of Edu.*, 406 F. Supp. 3d 865, 877 (D. Haw.

12   2019).  Dismissal without leave to amend "is not appropriate unless it is clear . . . that the

13   complaint could not be saved by amendment," *Harris v. Cnty. of Orange*, 682 F.3d 1126,

14   1131 (9th Cir. 2012); thus, "a district court should grant leave to amend . . . unless it

15   determines the pleading could not possibly be cured by the allegation of other facts,"

16   *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990); *see*

17   *also Balistieri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint

18   should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no

19   set of facts in support of his claim which would entitle him to relief.").

20        Here, although the disclaimers are effective, there remains the possibility that Mr.

21   Hesketh could plead facts to negate those disclaimers.  *See Swanson*, 826 P.2d at 673.

22   Moreover, if there is inconsistency regarding a policy's discretionary language, that may

1   be sufficient to create a question of fact.  *See Mikkelsen*, 404 P.3d at 478-79.

2   Accordingly, although the court grants TRC's motion, it dismisses Mr. Hesketh's breach

3   of contract and promissory estoppel claims without prejudice and with leave to amend.

4   The court orders Mr. Hesketh to file his second amended complaint, if any, within 14

5   days of the date this order is filed.

6        After TRC's motion noted, Mr. Hesketh filed a separate motion for leave to file a

7   second amended complaint.  (*See* MTA.)  Because the court is granting leave to amend as

8   part of this order, the court denies Mr. Hesketh's motion to amend as moot.

9                **IV.   CONCLUSION**

10        For the foregoing reasons, the court GRANTS in part and DENIES in part TRC's

11   motion for judgment on the pleadings (Dkt. # 22).  Specifically, the court dismisses Mr.

12   Hesketh's breach of contract and promissory estoppel claims.  Mr. Hesketh shall file a

13   second amended complaint, if any, within fourteen (14) days of the date this order is

14   filed.  Mr. Hesketh's motion for leave to file a second amended complaint (Dkt. # 33) is

15   DENIED as moot.

16        Dated this 12th day of April, 2021.

17

18

19               JAMES L. ROBART
                 United States District Judge

20

21

22