1
2
3
4

Christina L. Henry, WSBA# 31273
Henry & DeGraaff, PS
119 1st Ave S, Ste 500
Seattle, WA 98104
Tel: +1-206-330-0595
Fax: +1-206-400-7609
chenry@hdm-legal.com

5

Other Counsel on Signature Page

6

7

8

9
10

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

11

12
13

JOSEPH J. HESKETH III,
*on his behalf and on behalf of other similarly situated persons,*

14

Plaintiff,

15

v.

16
17

TOTAL RENAL CARE, INC,
*on its own behalf and on behalf of other similarly situated persons,*

18

Defendants.

19

Case No: 2:20-cv-01733-JLR

SECOND AMENDED CLASS ACTION COMPLAINT

(JURY DEMAND)

20
21
22
23

Plaintiff, Joseph J. Hesketh III, individually and on behalf of all other similarly situated, sues Defendant, Total Renal Care, Inc. ("Total") individually and on behalf of all others similarly situated, and alleges:

I.     **OVERVIEW**

24
25
26

1.     An employee has the right to be paid for the time the employee does work for an employer at the rates to which the parties have agreed. This action is filed because the

SECOND AMENDED CLASS ACTION
COMPLAINT - 1

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

Defendant and others failed to pay the Plaintiff and the other class members the amounts they were due to be paid for the work they performed and which the Defendants agreed to pay.

2.      Total is an integral part of DaVita, Inc. ("DaVita") (formerly known as Total Renal Care Holdings, Inc.) DaVita is a nationwide entity that employs 56,793 people in the United States to operate its profit driven business model through a number of entities controlled and operated by DaVita.

3.      Internally, DaVita treats 30 of its subsidiaries, including Total, as a "whole" without distinction between DaVita and Total or the other entities operating under DaVita's umbrella. There is a single payroll system and pay practices utilized to administer payroll and issues relating to the compensation of its employees.

4.      Employees of Total and the other entities found under the DaVita umbrella are led to be believe that they all part of a single "village" down to including the registered trademark of DaVita on their paychecks. The impact of the single village mantra is exemplified by the fact that some managerial level employees are unsure what subsidiary actually employs them.

5.      DaVita describes itself as an entity that "…provide[s] dialysis and administrative services and related laboratory services throughout the U.S. via a network of 2,753 outpatient dialysis centers in 46 states and the District of Columbia.[1]

6.      As of December 31, 2019, DaVita operated or provided administrative services through a network of 2,753 outpatient dialysis centers in the U.S.[2]  This includes 53 locations in Washington State.

7.      Plaintiff is an employee of Total and a member of the DaVita village and began working for Total over thirteen (13) years ago.

---

[1] See DaVita, Inc.'s 2019 10k available at https://www.sec.gov/ix?doc=/Archives/edgar/data/927066/000092706620000014/dva-12311910k.htm#s967C77CBE804541FAE5B78B764C16026

[2] *Id.*

SECOND AMENDED CLASS ACTION
COMPLAINT - 2

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

8.      DaVita encourages the employees of Total and the other entities under the DaVita umbrella to believe that DaVita is a village community and repeatedly tells its employees that it lives by "We said. We did." That is often repeated in various ways to its employees to confirm that if DaVita says something to its employees, they can impose trust and confidence that DaVita will do what it says.

9.      DaVita maintains and publishes an employee handbook titled "Teammate Policies" which contains the conditions of employment; the handbook states what is expected of DaVita employees.

10.     DaVita distributes the handbook through its StarLearning program, which is set forth as an educational system devised by DaVita to enhance its employees' knowledge. Nowhere does the StarLearning system advise or even suggest that it is a system for an employee to waive or relinquish their rights. In light of this and the often repeated "We said. We did," or similar variations, there is no reason for an employee to suspect that participating in StarLearning will reduce their rights in any way.

11.     To the extent that DaVita claims that any statement by its employees—the overwhelming majority of which have no legal training, knowledge or experience as to whether or not something amounts to a contract, express or implied—is unreasonable, it is a narrow and myopic view that is overwhelmed by the overall relationship which includes statements that its employees can repose trust and confidence in DaVita.

12.     Also, the Plaintiff, like the other members of the proposed class, is directed to acknowledge the various provisions that are no doubt prepared by lawyers for DaVita and presented by DaVita on a take-it-or-leave-it basis without any opportunity for any employee to negotiate any term. The prepared provisions set forth legal conclusions when DaVita knows its employees, like Plaintiff, lack sufficient legal training, knowledge or experience to understand the legal meaning or legal effect of provisions they are asked to sign. If anything, DaVita's efforts to have their employees sign provisions that suggest they are waiving any rights

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

confirms DaVita's consciousness that its employees rely on the policies offered as part of their terms of employment, as they should.

13.     DaVita is able to identify each employee who has submitted an acknowledgment that they have read and understood the policies set forth in the Teammates Handbook. DaVita is also able to identify and list any employees who have not submitted an acknowledgment that they have read and understood the policies.

14.     The Teammates Handbook is not designed to alter the "at will" employment status of Mr. Hesketh or the similarly situated members of the Putative Class that Mr. Hesketh seeks to represent, in the sense that it does not guarantee TRC employees that they will be employed for a term of employment.

15.     The Teammates Handbook does, however, by its very terms inform the TRC employees that the Teammate Policies "set forth the entire arrangement between [the employee] and DaVita" and that the employee is "governed" by the Teammate Policies found in the Teammate Handbook, the Code of Conduct and the DaVita Compliance Program.

16.     Specifically, each employee of TRC and DaVita is required to sign a "Teammate Acknowledgment" and "Teammate Attestation" annually that includes the following:

> As a DaVita teammate, I understand ***I am expected to read, understand and adhere to our Company's policies***. I will familiarize myself with the material in the Teammate Policies, the Code of Conduct and the DaVita Compliance Program, as well as any changes to them.
>
> ………..***I understand that I am governed by the contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program***, and I recognize that DaVita reserves the right to interpret, amend, modify, supersede or eliminate policies, practices or benefits (except at employment at will policies) described in these policies from time-to-time in its sole and absolute discretion. No oral amendment to any policy or benefit described herein shall be effective.
>
> I understand that the Teammate Policies, the Code of Conduct and the DaVita Compliance Program and their contents are not intended to create any contractual or legal obligations, express or implied, between DaVita and its teammates; however, ***these policies do set forth the entire employment arrangement between me and DaVita with respect to the at-will nature of my employment relationship with DaVita***……..

17.     Thus, while the "contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program" do not alter the at will employment status of non-exempt

SECOND AMENDED CLASS ACTION
COMPLAINT - 4

**HENRY & DEGRAAFF, P.S.**
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

TRC or DaVita employee, by its very words the acknowledgement tells that employee that the "contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program" "set forth the entire employment arrangement between [the employee] and DaVita" and that the employee must "read, understand and adhere to" the Teammate Policies found in the Teammate Handbook, the Code of Conduct and the DaVita Compliance Program because the employee is "governed" by those policies.

18.     Every year, every employee of TRC and DaVita is required to read a "Teammate Policies Update" that contains changes to the Teammate Policies for the past year and again acknowledge that the employee has "read, understand[s] and adhere[s] to our Company's policies. I will familiarize myself with the material in the Teammate Policies, the Code of Conduct and the DaVita Compliance Program, as well as any changes to them."

19.     After the employee finishes the "Teammate Policies Update" each employee must again acknowledge that the employee understands that he or she is "governed by the contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program," that these "policies do set forth the entire employment arrangement between me and DaVita with respect to the at-will nature of my employment relationship," that his or her employment with employment with DaVita has "no specific term and is at the mutual consent of myself and DaVita," and that "either DaVita or I can terminate my employment relationship at any time, with or without cause, with or without notice."

20.     Through these annual acknowledgements and other documents and programs that make up the carefully formulated corporate culture of DaVita, Mr. Hesketh and the members of the putative class are taught that the specific terms of their employment (the "entire employment arrangement") is found in the "contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program" and that DaVita may change the "contents of the Teammate Policies, the Code of Conduct and the DaVita Compliance Program" and thereby changed the specific terms of its employee's employment (the "entire employment arrangement").

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

21.     In informing its employees that "the[] policies [] set forth the entire employment arrangement between [employee] and DaVita with respect to the at-will nature of my employment relationship with DaVita," Defendant informs its employees that its policies, including the policies found in the Teammate Policies, are terms of the employees employment making the preceding admonition that the policies are not intended to "create any contractual or legal obligation[]" inherently ambiguous and at best confusing.  Moreover, employees were bound by the Teammate Policies and relied on corporate culture and management directives to conclude that Defendant was bound by the obligations that it set forth in the Teammate Policies, the Code of Conduct and the DaVita Compliance Program.

22.     Defendant, for reasons that had to do with defendant's own self-interests, created an environment in which defendant's employee were led to believes that the Teammate Policies, the Code of Conduct and the DaVita Compliance Program purport to be fair, and would be applied consistently and uniformly to each employee.

23.     Managerial employees acknowledge that the Teammates Handbook creates mutual expectations between the employees and DaVita that the policies will be applied to their relationship.

24.     "Integrity" is also ingrained in DaVita's corporate culture, and as with other corporate mission statements, is pervasive. It is known as: "We say, what we believe, and we do what we say. We are trusted because we are trustworthy. In our personal, team, and organizational values, we strive for alignment in what we say and do."

25.     Defendant created an atmosphere where its at will employees are expected to abide by the Teammate Policies, the Code of Conduct and the DaVita Compliance Program and where employees made to believe that Total will abide by those same policies during the period that they are employed.

26.     When considering the above statements in the context of repeated communications in writing and at corporate meetings with DaVita's management to its employees that they can trust it, any effort by DaVita to disclaim that it does not owe the

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

benefits set forth in the Teammates Policies handbook is not credible and the repeated statements negate any disclaimers.

27.     There is no doubt that the Plaintiff, like the other members of the proposed class, expected fair treatment from DaVita, with promises as outlined in the Teammate Policies handbook to remain on the job at Total and to not seek employment elsewhere.

28.     Under the Compensation section, the handbook includes a "Disaster Relief Policy" that sets out DaVita's pay practices for non-exempt employees during a "declared emergency or natural disaster."

29.     Management personnel of TRC's expect both at will employees and management employees to be familiar with, rely upon and follow (be "governed by") the policies in the Teammates handbook.

30.     Section 4 of the Teammate Policies and Procedures Handbook titled "Pay Practices," true to its name, contains TRC and DaVita's "pay practices" arrangement with its at will employees.

31.     It is TRC and DaVita's declared and actual policy that the provision of its Pay Practices, Section 4 of the DaVita Teammate Handbook is part of its employment contract with its at will employees and is enforceable by those employees as part of their "employment arrangement" with TRC and DaVita.

32.     Neither TRC nor DaVita reserve to themselves the right to "renege" on its Pay Practices retroactively after work has been performed, but TRC and DaVita reserve the right to change those Pay Practices at any time and for any reason.

33.     Defendant chooses to establish such Teammate Policies, the Code of Conduct and the DaVita Compliance Program and makes them known to its employees to enhance the employment situation, to secure an orderly, cooperative and loyal work force, and to give its employees the peace of mind associated with job security and the conviction that he or she will be treated fairly.

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

34.     Section 4 was intended to create expectations among TRC and DaVita Employees to incentivize those employees to work under conditions that are sometimes unpleasant, sometimes inconvenient, and sometimes dangerous.

35.     For example, Section 4.5 of the Pay Practices section of the DaVita Teammate Handbook states that

OVERTIME

Non-exempt teammates (see the Teammate Classifications policy) are paid overtime at one and one half times their regular rate of pay for hours worked in excess of 40 in any workweek. Where state or local wage and hour laws differ from these policies, DaVita complies with state law to the extent those laws are more beneficial to our teammates.

36.     Section 4.12 of the Pay Practices Section of the DaVita Teammates Handbook is titled the "Disaster Relief Policy." The Disaster Relief Policy is a carefully crafted pay scheme designed to encourage and incentivize DaVita Employees within an area affected by a "declared emergency" to appear at work rather than exercise their rights as employment-at-will employees and chose to shelter from the emergency or natural disaster rather than show up for work.

37.     The "Disaster Relief Policy" is designed for pay continuance during an emergency time frame when a "declared emergency or natural disaster presents teammates from performing their regular duties."

38.     A "declared emergency or natural disaster" occurs one of <u>three ways</u>: when said emergency or natural disaster

       a. "[is] proclaimed by [] the President of the United States;"

       b.  a "state Governor or other elected official; **_or_**"

       c. "[by] local [DaVita] leadership."

(Emphasis added.)

39.     The "PAY PRACTICE FOR NON-EXEMPT TEAMMATES" section of the Disaster Relief Policy at issue here provides: "If a designated facility or business office **is open** during the emergency time frame, teammates who report to their location and **work their scheduled hours will be paid premium pay** for all hours worked. Unless state law requires

**HENRY & DEGRAAFF, P.S.**
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

otherwise, premium pay will be one-and-one-half (1.5) times the teammate's base rate of pay." (emphasis added)

40.     The other provisions of the Disaster Relief Policy relating to situations that the employees are not able to perform their functions but those provisions do not make the promise of premium pay for those who do work. They provide:

a.     The "PAY PRACTICE FOR NON-EXEMPT TEAMMATES" section of the Disaster Relief Policy provides that if a facility or business office is closed due to a declared emergency or natural disaster non-exempt employees "will be paid for their regularly scheduled hours at their base rate of pay during the designated emergency time frame;"

b.     If a facility or business office opens late or closes early due to a declared emergency or natural disaster, employees who show up to work their arrive or leave at that approved early or late opening or closing time will be paid their hourly rate of pay.

c.     If a facility or business office is open during the emergency time frame and employees are unable to make it to work, those employees have to utilize their "person time off" (PTO) or go unpaid, but if the employee makes it into work, the employee is paid premium pay.

41.     "Premium pay" is defined as one and one half times regular pay, unless state law dictates otherwise.

42.     In or around 2018, the Disaster Relief Policy was purposefully re-written from a clearly subjective standard to an ambiguous objective standard.

43.     Specifically, before in 2017 when the Disaster Relief Plan was first written it read that "[t]he Disaster Relief Policy provides for pay continuance during an emergency time frame," Emergency Time Frame was defined as:

A declared emergency or natural disaster shall be proclaimed by either the President of the United States, a state Governor or other elected official, ***and if local leadership (DVP/Palmer) deems it appropriate***. (Emphasis added.)

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

44.    After January 1, 2018, the Disaster Relief Policy was changed to an objective standard and now reads:

> A declared emergency or natural disaster shall be proclaimed by either the President of the United States, a state Governor or other elected official*, or if local leadership (DVP/Palmer) deems it appropriate.* (Emphasis added.)

45.    As objective standard was thought necessary to motivate employees to strive to get to work under the extraordinary circumstances of a declared emergency or natural disaster and, like working overtime, TRC and DaVita wanted its employees to know if they showed up for work in a declared natural disaster or emergency, they would receive premium pay.

46.    Thus, after January 1, 2018, once a natural disaster or emergency was declared in was the task of local leadership and the Disaster Governance Counsel to "identify" the business offices and facilities affected by that natural disaster or emergency and the time frame they were affected by the same.

47.    When the leadership of TRC and DaVita changed the language of the Disaster Relief Policy they could not have known that the worst health care emergency in over 100 years would strike the United Stated in March of 2020.

48.    On January 21, the first case of COVID-19 in the United States was confirmed in Snohomish County, Washington.  An American citizen had returned from Wuhan, China to the U.S., landing at Seattle–Tacoma International Airport on January 15, 2020.

49.    On January 31, 2020, the President of the United States declared the COVID-19 outbreak to be a public health emergency and set the first quarantines of Americans by the federal government in over 50 years. All flights from China to the U.S. were funneled to one of seven airports, including Seattle, Washington.

50.    On Feb. 26, 2020, the Centers for Disease Control and Prevention (CDC) reports the first case of person-to-person transmission in the U.S., a Chicago woman who developed symptoms after visiting China.

51.    On February 28, 2020, a woman in her 50s who had recently returned from South Korea and who was an employee of the United States Postal Service at its Network

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

Distribution Center facility in Federal Way, King County, tested positive for Covid-19. DaVita's maintains a business office in Washington state located at Federal Way.

52.     Also, around March 13, 2020, the Defendant began closing parts or all of its business offices and employees began working remotely rather than at their offices.

53.     Until March 31, 2020 and beyond, the COVID-19 Crisis and the national emergency that it spawned prevented some, but not all DaVita teammates from performing their regular duties.

54.     During the COVID-19 crisis, thousands of Defendant's nonexempt employees, including the Plaintiff, worked their regularly scheduled hours, even though there was a "declared emergency" rather than utilize PTO time or simply forgo pay and exercise their rights as employment-at-will employees to shelter themselves and their families from the dangers presented by COVID-19.

55.     Those nonexempt employees then began to request to be paid premium pay per the Disaster Relief Policy.

56.     When the leadership of TRC and DaVita changed the language of the Disaster Relief Policy they could not have known that the worst health care emergency in over 100 years would struck the United Stated in March of 2020.

57.     Even so, the decision was almost immediately made that TRC and DaVita would not pay premium pay to those business office and facilities affected by the COVID-19 crisis, even though all of the TRC and DaVita nonexempt at-will employees who worked their hours objectively qualified for premium pay.

58.     Defendant never convened a meeting of the "Disaster Governance Counsel" to identify the emergency time frame and offices and facilities affected as required by DaVita's Disaster Relief Policy. Nor did Defendant pay Plaintiff or the thousands of similarly situated employees the premium pay promised for the regularly scheduled hours they worked during the time of the declared emergency.

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

59.     The beginning of the emergency time frame in this instance was established by the emergency declaration. The need to identify an end date was mooted by the change to the disaster relief policy that excluded COVID-19 from the policy.

60.     To the extent that a start date to the emergency time frame had to be identified the Defendant failed to do so in good faith and instead unilaterally and arbitrarily declared that the Disaster Relief Policy did not apply to the COVID-19 Crisis because the Crisis did not prevent any of Defendants employees from performing their regular duties, despite the fact that the premium pay was promised only when hours were actually worked.

61.     DaVita's position was that the Disaster Relief Policy did not apply because it did not prevent employees from performing their regular functions. If this condition applies to emergency declarations as opposed to natural disasters, it is inconsistent with the specific provision of the Disaster Relief policy that promises premium pay to those nonexempt employees who perform their scheduled hours.

62.     Additionally, DaVita acknowledges that even if the specific provision of the Disaster Relief policy that promises premium pay to those nonexempt employees who perform their scheduled hours, it does not require that all employees be prevented from working their scheduled hours before the policy applies. There were employees who had their location and work affected by the pandemic, and therefore the condition was satisfied.

63.     DaVita also arrived at its position by asserting that there had been no emergency time frame declared. DaVita arrived at this interpretation by reading the policy that only requires the emergency time frame to be identified as if it made the action discretionary by substituting a need to declare a time frame rather than identifying as set forth in the policy.

64.     DaVita owed a duty of good faith in the exercise of its responsibilities set forth in the Teammates policies. DaVita's failure to identify the emergency time frame was not in good faith, nor was its interpretation of the provision as requiring an inability to work when the premium pay was promised for working.

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

65.     On March 31, 2020, DaVita attempted to change the Disaster Relief Policy to exclude the COVID-19 crisis.  However, it is believed that DaVita employees were not provided with notice of any change in the Disaster Relief Policy and they were not solicited to acknowledge the policy change via the Star Learning system until September of 2020.

66.     Defendant's leadership eventually amended the Disaster Relief Policy by adding the following paragraph:

COVID-19 CRISIS

The Disaster Relief Policy does not apply to the COVID-19 crisis. The Disaster Relief Policy applies only when teammates are unable to perform their regular duties. The policy is effective upon a decision by local leadership and the Disaster Governance Council that a declared emergency or natural disaster prevents our facilities from operating or prevents our teammates from working.

Under the COVID-19 crisis, our teammates are able to work and are essential in either in a supporting role for our health care workers or in actually providing healthcare services to patients.

67.     Whether or not Defendant's effort to unilaterally change its pay agreement with its non-exempt employees was effective, Defendant may not retroactively change its pay agreement with its employees after those employees have showed up for work, relying on DaVita's Disaster Relief Policy regarding premium pay. That change may only be made upon reasonable notice, with acceptance, and prospectively.

## II.     PARTIES

68.     Plaintiff, Joseph J. Hesketh, III, is an individual who is a citizen of and resides in, the State of Washington.

69.     Defendant Total appears to be a California corporation, although court disclosure filings made on its behalf are conflicting as to its state of incorporation.

70.     DaVita is a Delaware Corporation. Both list their principal place of business at the same address in Denver, Colorado.

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

### III.   JURISDICTION AND VENUE

71.   This Court has jurisdiction over Total and the Defendant Class Members who regularly conduct business in King County, Washington.

72.   Venue is proper in in King County Superior Court because Total and the Defendant Class Members transact business in King County, Washington.

73.   The Defendant removed this action contending that this Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C.A. §1332(d). (ECF 1).

74.   Venue is proper under 28 U.S.C.A. §1391.

### IV.   ALLEGATIONS COMMON TO PLAINTIFF AND THE CLASS AGAINST THE DEFENDANT AND THE CLASS OF DEFENDANTS.

75.   Plaintiff and Class Members (hereinafter collectively "Plaintiff Class Members") are employed by Total, and DaVita is the umbrella corporation of the captive Defendant Class Members.

76.   Plaintiff Class Members provided services to DaVita as the umbrella corporation of the captive Defendant Class Members after the national emergency declared on January 31, 2020.

77.   DaVita as the umbrella corporation of the captive Defendant Class Members failed to pay the Plaintiff Class Members premium time as promised in the Teammates Policy handbook.

78.   The Plaintiff Class Members are entitled to the premium pay for the hours they worked as they were promised.

79.   The amounts owed to the Plaintiff Class Members are liquidated amounts.

### V.   CLASS ALLEGATIONS AS TO PLAINTIFF CLASS

80.   Plaintiff brings this complaint individually and on behalf of a class of all other persons similarly situated.

81.   The class is comprised of all non-exempt employees of DaVita as the umbrella corporation of the captive Defendant Class Members who:

SECOND AMENDED CLASS ACTION
COMPLAINT - 14

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

a.      Worked their regularly scheduled hours for Defendant during from January 31, 2020;

b.      Were not paid the premium pay equal to one and one half times their base rate, for any work performed after the declaration of emergency on January 31, 2020.

82.      Based on the number of clinics operated by DaVita as the umbrella corporation of the captive Defendant Class Members in the United States, upon information and belief, the class is so numerous as to make it impracticable to join all members of the class of plaintiffs. On information and belief, the class is comprised of hundreds, if not thousands of individuals.

83.      There are questions of law and fact which are common to all members of the Plaintiff Class, which questions predominate over any question affecting only individual class members, the principal common issues are:

a.      whether Plaintiff Class Members are entitled to be paid the premium pay for the hours they worked for the Defendant Class Members since the declaration of an emergency; and

b.      Whether the Plaintiff Class Members are entitled to prejudgment interest on any amounts they are owed by the Defendant Class Members.

84.      The only individual questions concern the identification of class members and the computation of the relief to be afforded each class member and can be determined by a ministerial examination of the Defendant Class Members' records.

85.      Plaintiff's claims are typical of the claims of the Plaintiff Class Members. Upon information and belief, the Defendant Class Members treated all of the Plaintiff Class Members the same by failing to pay premium time since the declaration of an emergency.

86.      Plaintiff will fairly and adequately protect the interests of all class members in the prosecution of this action. He is similarly situated with, and has suffered similar injuries as, the members of the class he seeks to represent. He feels he has been wronged and wishes to obtain redress of the wrong. To that end, plaintiff has retained counsel experienced in handling

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

class action suits involving claims as set forth in this complaint. Neither the named plaintiff nor his counsel has any interest which might cause them not to vigorously pursue this action.

87.   The Defendant Class Members have and are acting in a uniform manner with respect to the entire class and on grounds uniformly applicable to the class.

88.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

89.   The amounts involved on an individual basis make pursuit of individual actions unlikely.

90.   The concentration of the litigation concerning this matter in this Court is desirable if the court.

91.   A failure of justice will result from the absence of a class action.

92.   Plaintiff Class Members were damaged by the conduct complained of, in that they were not paid the amounts owed to them and that the Defendant Class Members promised to pay them.

## VI.   CLASS ALLEGATIONS AS TO THE DEFENDANTS CLASS.

93.   Plaintiff brings this complaint against the Defendant Total individually and on behalf of a class of all others similarly situated. DaVita operates as a single unit (or what it calls a village) for purposes of promises made to employees notwithstanding the creation of separate entities. To the extent there are separate entities operating different locations, each have the same interest as Total and DaVita and ultimately DaVita as the owner of any separate entities is affected by the claims made in this action.

94.   The Defendant Class is comprised of all entities which are owned or controlled by the DaVita who:

a.   Has employees who are covered by the Teammates Policies Handbook published by DaVita, Inc.

b.   The employees worked for the Defendant Class Members on and after January 31, 2020;

SECOND AMENDED CLASS ACTION
COMPLAINT - 16

      c.      The Defendant Class Members did not pay premium pay, defined as 1.5 times their base rate, for any work performed since the declaration of the emergency.

95.     Based on the number of clinics operated by the Defendant Class Members in the United States, upon information and belief, the class is so numerous as to make it impracticable to join all members of the class of plaintiffs. On information and belief, the class is comprised of tens if not hundreds of entities.

96.     DaVita directs and controls the payroll and human resources functions and policies for Total and each putative Defendant class member. Total and all putative defendant class members operate under the same policies and procedures and none of them have any different policies or procedures in place.

97.     Given that Total and the putative Defendant class members operate under the same policies, procedures and control, there are questions of law and fact which are common to all members of the Defendant Class, which questions predominate over any question affecting only individual Defendant Class Members, the principal common issues are:

      a.      Whether Plaintiff Class Members are entitled to be paid premium time for the hours they worked for the Defendant Class Members since the declaration of an emergency.

      b.      Whether the Plaintiff Class Members are entitled to prejudgment interest on any amounts they are owed by the Defendant Class Members.

98.     The only individual questions concern the identification of Defendant Class Members and the computation of the relief that the defendant class members may be liable for, and can be determined by a ministerial examination of the Defendant Class Members' electronically stored information that is readily available to Total as a result of its employees access to and use of the same software for Total and all of the putative defendant class members.

99.     Total's position or defenses to the claims are typical of the position or defenses of the Defendant Class Members. Upon information and belief, the Defendant Class Members

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

1    treated all of the Plaintiff Class Members the same by failing to pay premium time since the

2    declaration of an emergency as directed by DaVita.

3        100.    Defendant Total will fairly and adequately protect the interests of all class

4    members in the defense of this action. It is similarly situated to DaVita and provides its

5    employees DaVita's company policies as set forth in the Teammates Policies Handbook and all

6    of the Defendant Class Members treat its employees in accordance with its provisions.  To that

7    end, Defendant Total is likely to retain counsel experienced in handling class action suits

8    involving claims as set forth in this complaint. Neither Total nor its counsel will have any

9    interest which might cause them not to vigorously defend this action and the interests of the

10   Defendant Class Members.

11       101.    The Defendant Class Members have and are acting in a uniform manner with

12   respect to the entire class and on grounds uniformly applicable to the class.

13       102.    A class action is superior to other available methods for the fair and efficient

14   adjudication of the controversy.

15       103.    The Defendant Class Members can more economically defend the claims rather

16   than defend tens if not hundreds of individual actions.

17       104.    The concentration of the litigation concerning this matter in this Court is

18   desirable if the court.

19       105.    A failure of justice will result from the absence of a class action.

20                    <u>**COUNT I – BREACH OF CONTRACT**</u>

21       106.    The Plaintiff incorporates the foregoing paragraphs.

22       107.    The Plaintiff Class Members are nonexempt at-will employees of the Defendant

23   Class Members, who entered into a contract with the Defendant Class Members as part of their

24   employment, were offered the Teammate Policies handbook that governed the terms of their

25   compensation during their employment.

26

SECOND AMENDED CLASS ACTION
COMPLAINT - 18

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

108.    The Plaintiff's Class accepted those terms of compensation by accepting employment, working in compliance with the terms and conditions in the Teammate Policies handbook, and continuing to work, including the wages to be paid for their services.

109.    The contract set forth the rate of pay for the Plaintiff Class Members if they worked and there was an emergency declared.

110.    The Defendant Class Members have breached their agreements with the Plaintiff Class Members by failing to pay them premium time for their work since the declaration of an emergency.

111.    The Plaintiff Class Members have fully performed their obligations under the parties' agreement for the payment of wages promised.

112.    The Plaintiff Class Members have been damaged by the Defendant Class Members breach.

113.    The Plaintiff Class Members are entitled to damages for the Defendant Class Members breach.

114.    The Plaintiff Class Members are entitled to prejudgment interest on any liquidated amount of damages.

**Wherefore,** Plaintiff and Class Members pray that this court:

A.  Certify this case as a class action with the named Plaintiff as class representative and his attorneys as counsel on behalf of the class described herein;

B.  Certify a class of Defendants with the named Defendant as the representative of the Defendant Class;

C.  Order appropriate compensatory damages in an amount to be determined at trial for the Plaintiff and the Class in excess of $75,000;

D.  Award attorney's fees and costs if allowed by law;

E.  Award prejudgment interest on any award; and

F.  Provide such other or further relief as the Court deems appropriate.

SECOND AMENDED CLASS ACTION
COMPLAINT - 19

**HENRY & DeGRAAFF, P.S.**
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

## COUNT II – GOOD FAITH AND FAIR DEALING

115.    The Plaintiff incorporates the foregoing paragraphs.

116.    The Defendant and the Defendant Class Members have breached the implied duty of good faith and fair dealing present in all contracts by refusing to cooperate and perform their obligations to identify the emergency time frame so that employees could receive the benefit of the bargain.

117.    The Defendant and the Defendant Class Members offered to pay under their Disaster Relief Policy in the Teammate Policies handbook that every employee received upon employment and annually renewed affirmatively, but they failed to perform their ministerial obligation to identify the emergency time frame so employees would receive the premium pay promised.

118.    Thus, the Disaster Pay offer in the Teammates Policies handbook was therefore made in bad faith and performed in bad faith by failing to abide by the offer's objective standard of an emergency declaration, and subjectively refusing to identify the emergency time frame and failing to pay the premium pay promised to the employees.

119.    Additionally, Total made no effort to inform employees that they would not identify an emergency time frame as promised.

120.    Total obtained the benefits of the employees performing their regular duties based on the promise of premium pay but they were never paid.

121.    Total acted in bad faith by making a unilateral change to the Disaster Relief Policy by claiming in bath faith that the policy changed retroactively.

122.    Plaintiff and the Plaintiffs Class Members are entitled to compensatory damages as a result of failing to perform in good faith and prejudgment interest since they are liquidated amounts owed.

## COUNT III – PROMISSORY ESTOPPEL

123.    The Plaintiff incorporates the foregoing paragraphs.

HENRY & DeGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

124.     Defendant induced the Plaintiff Class Members to stay on the job and not seek other employment based on DaVita's corporate culture of "We said. We did" and their Pay Practices promised in the Disaster Relief Policy provisions of the Teammate Policies handbook.

125.     DaVita asked the Plaintiff Class Members to abide by the Teammate Policies, the Code of Conduct and the DaVita Compliance Program as part of their employment.

126.     DaVita should have reasonably expected that its promise would cause Plaintiff and the Plaintiff Class members to change their position and comply with the policies and continue employment during an emergency.

127.     The Plaintiff and the Plaintiff Class Members did change their position and continued to work during an emergency.

128.     The Plaintiff and the Plaintiff Class Members relied on DaVita's promises and were justified in relying on DaVita's promises.

129.     It would be unjust to not enforce DaVita's promise to the Plaintiff and the Plaintiff Class Members and any injustice can be avoided only if the promise is enforced.

130.     The Defendant and the Defendants' Class are estopped from refusing to fulfill their promise to pay the Plaintiff and the Plaintiff Class Members the emergency pay they were promised.

131.     The Defendant and the Defendants' Class failed to fulfill their promise to pay the Plaintiff and Plaintiff's Class Members premium time for their work since the declaration of an emergency.

132.     The Plaintiff Class Members have fully performed their obligations under the Teammate Policies, the Code of Conduct and the DaVita Compliance Program agreement for the payment of wages promised.

133.     The Plaintiff Class Members have been damaged by the Defendant Class Members failure to fulfill their promise.

134.     The Plaintiff Class Members are entitled to damages for the Defendant Class Members failure to fulfill their promise.

SECOND AMENDED CLASS ACTION
COMPLAINT - 21

HENRY & DEGRAAFF, P.S.
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

135.    The Plaintiff Class Members are entitled to prejudgment interest on any liquidated amount of damages determined to be owed.

**Wherefore,** Plaintiff and Class Members pray that this court:

A.   Certify this case as a class action with the named Plaintiff as class representative and his attorneys as counsel on behalf of the class described herein;

B.   Certify a class of Defendants with the named Defendant as the representative of the Defendant Class;

C.   Order appropriate compensatory damages in an amount to be determined at trial for the Plaintiff and the Class in excess of $75,000;

D.   Award attorney's fees and costs if allowed by law;

E.   Award prejudgment interest on any award; and

F.   Provide such other or further relief as the Court deems appropriate.

## <u>COUNT IV - UNJUST ENRICHMENT</u>

136.    The Plaintiff incorporates the foregoing paragraphs.

137.    If Plaintiff cannot establish a contract that entitles Plaintiff and the Plaintiff Class Members to the relief sought under Count I, Plaintiff alternatively asserts a claim that the Defendant and the Defendants Class have been unjustly enriched.

138.    Based on Defendant and the Defendant Class Members' own Teammate Policies, Plaintiff and the Plaintiff Class Members were entitled to be paid premium pay for working during a national emergency.

139.    Defendant and the Defendant Class Members failed to pay Plaintiff and the Plaintiff Class Members the premium pay they were entitled to and instead retained those monies.

140.    Defendant and the Defendant Class Members benefited at the expense of the Plaintiff and the Plaintiff Class Members by receiving their dedication and commitment to provide services during a national emergency.

**HENRY & DEGRAAFF, P.S.**
119 1ST AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

141.   Defendant and the Defendant Class Members were unjustly enriched by its refusal to pay premium pay.

142.   Defendant and the Defendant Class Members should be required to disgorge the amounts by which they were unjustly enriched.

143.   Plaintiff and the Plaintiff Class Members have suffered and are entitled to recover damages along with prejudgment interest.

**Wherefore,** Plaintiff and Class Members pray that this court:

A.   Certify this case as a class action with the named Plaintiff as class representative and his attorneys as counsel on behalf of the class described herein;

B.   Certify a class of Defendants with the named Defendant as the representative of the Defendant Class;

C.   Order appropriate compensatory damages and disgorgement in an amount to be determined at trial for the Plaintiff and the Class in excess of $75,000;

D.   Award attorney's fees and costs if allowed by law;

E.   Award prejudgment interest on any award; and

F.   Provide such other or further relief as the Court deems appropriate.

Respectfully submitted,

Dated this 12th of May 2021.

*/s/ Christina L Henry*
Christina L Henry, WSBA# 31273
Counsel for Plaintiff
HENRY & DEGRAAFF. PS
119 1ˢᵗ Ave S, Ste 500
Seattle, WA 98104
Tel# 206-330-0595
Fax# 206-400-7609
*chenry@hdm-legal.com*

*/s/ Scott C. Borrison*
Scott C. Borrison
(Pro Hac Vice)
BORISON FIRM, LLC
1900 S. Norfolk Rd., Suite 350
San Mateo, CA 94403
Tel# 301-620-1016
Fax# 301-620-1018
*scott@borisonfirm.com*

SECOND AMENDED CLASS ACTION
COMPLAINT - 23

HENRY & DEGRAAFF, P.S.
119 1ˢᵗ AVE S, SUITE 500
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

1

2

3   /s/ J. Craig Jones                    Craig Hill
    (Pro Hac Vice)                        (Pro Hac Vice)
4   JONES & HILL, LLC                     JONES & HILL, LLC
    131 Highway 165 South                 131 Highway 165 South
5   Oakdale, LA 71463                     Oakdale, LA 71463
    Tel# 318-335-1333                     Tel# 318-335-1333
6   Fax# 318-335-1934                     Fax# 318-335-1934
7   *craig@joneshilllaw.com*              *chill@joneshilllaw.com*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND AMENDED CLASS ACTION                  **HENRY & DeGRAAFF, P.S.**
COMPLAINT - 24                               119 1ST AVE S, SUITE 500
                                             SEATTLE, WASHINGTON  98104
                                             telephone (206) 330-0595
                                             fax (206) 400-7609