THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH J. HESKETH III, on his behalf and on behalf of other similarly situated persons,

Plaintiff,

v.

TOTAL RENAL CARE, INC., on its own behalf and on behalf of other similarly situated persons,

Defendant.

No. 2:20-cv-01733-JLR

**DEFENDANT TOTAL RENAL CARE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**

**NOTE ON MOTION CALENDAR: JULY 16, 2021**

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR)
152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................. 1

II.  STATEMENT OF FACTS .................................................. 1

    A.  TRC and Plaintiff's Employment ..................................... 1

    B.  The Teammate Policies and the Disaster Relief Policy ........................ 2

    C.  The Teammate Policies and Disaster Relief Policy Include Valid Disclaimers ......................................................... 2

    D.  The Disaster Relief Policy Does Not Apply to the COVID-19 Pandemic ........... 4

    E.  Plaintiff's First Amended Putative Class Action Complaint ................................ 6

    F.  This Court Dismissed Plaintiff's Claims for Breach of Contract and Promissory Estoppel with Leave to Amend ........................ 7

    G.  Plaintiff's Second Amended Complaint ............................... 8

III.  LEGAL STANDARD ....................................................... 9

IV.  ARGUMENT ................................................................ 10

    A.  Plaintiff's Breach of Contract and Promissory Estoppel Claims Fail ................ 10

        1.  There Are No Facts to Negate the Effective Disclaimers ...................... 10

        2.  There Are No Inconsistencies in the Policy's Discretionary Language ............................................................... 15

    B.  Plaintiff's Breach of Contract Claim Otherwise Fails Because the Conditions Precedent Never Occurred ............................... 17

    C.  Plaintiff's Equitable Reliance and Promissory Estoppel Claims Otherwise Fail Because Plaintiff Cannot Show Justifiable Reliance as a Matter of Law ........................................................... 18

    D.  Plaintiff Fails to State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing as a Matter of Law ........................ 20

    E.  Plaintiff Fails to State a Claim for Unjust Enrichment as a Matter of Law ......... 21

        1.  TRC Did Not Receive a Benefit "at Plaintiff's Expense" ...................... 22

        2.  Plaintiff Cannot Show Any Injustice ................................... 24

V.  CONCLUSION ............................................................... 24

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – i
152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarado v. Microsoft Corp.*,
 2010 WL 715455 (W.D. Wash. Feb. 22, 2010) ............................................................23

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................9

*Badgett v. Sec. State Bank*,
 807 P.2d 356 (Wash. 1991) ............................................................................................20

*Baker v. City of SeaTac*,
 994 F. Supp. 2d 1148 (W.D. Wash. 2014) ................................................................10, 19

*BOFI Fed. Bank v. Advance Funding LLC*,
 No. 14-CV-00484-BJR, 2015 WL 5008860 (W.D. Wash. Aug. 20, 2015) ................23, 24

*Bulman v. Safeway, Inc.*,
 27 P.3d 1172 (Wash. 2001) ........................................................................................18, 19

*Byram v. Thurston Cty.*,
 251 P. 103 (Wash. 1926), *modified* 252 P. 943 (1927) .............................................21, 24

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047 (9th Cir. 2011) .........................................................................................9

*Chandler v. Wash. Toll Bridge Auth.*,
 137 P.2d 97 (Wash. 1934) ...........................................................................................21, 22

*Chavez v. United States*,
 683 F.3d 1002 (9th Cir. 2012) .........................................................................................9

*Corbit v. J.I. Case Co.*,
 424 P.2d 290 (Wash. 1967) ............................................................................................19

*Dragt v. Dragt/DeTray, LLC*,
 161 P.3d 473 (Wash. Ct. App. 2007) ..............................................................................24

*Fleming v. Pickard*,
 581 F.3d 922 (9th Cir. 2009) ...........................................................................................9

*Hard 2 Find Accessories, Inc. v Amazon.com, Inc.*,
 58 F. Supp. 3d 1166 (W.D. Wash. 2014) ....................................................................20, 21

*Havens v. C&D Plastics, Inc.*,
 876 P.2d 435 (Wash. 1994) ............................................................................................15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Hollenback v. Shriners Hosp. for Children*,
    206 P.3d 337 (Wash. Ct. App. 2009) ..................................................................15

*Keystone Land & Dev. Co. v. Xerox Corp.*,
    94 P.3d 945 (Wash. 2004) ...............................................................................20

*Kimbro v. Atl. Richfield Co.*,
    889 F.2d 869 (9th Cir. 1989) ...........................................................................19

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...........................................................................9

*Kuest v. Regent Assisted Living, Inc.*,
    43 P.3d 23 (Wash. Ct. App. 2002) ...........................................................11, 12

*Lokan & Assocs., Inc. v. Am. Beef Processing, LLC*,
    311 P.3d 1285 (Wash. Ct. App. 2013) .................................................................17

*Mastaba, Inc. v. Lamb Weston Sales, Inc.*,
    23 F. Supp. 3d 1283 (E.D. Wash. 2014) ..............................................................22

*Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*,
    404 P.3d 464 (Wash. 2017) .................................................................................7

*Nelson v. Southland Corp.*,
    894 P.2d 1385 (Wash. Ct. App. 1995) ...........................................................12, 13

*NOVA Contracting, Inc. v. City of Olympia*,
    426 P.3d 685 (Wash. 2018) ...............................................................................20

*Pengbo Xiao v. Feast Buffet, Inc.*,
    387 F. Supp. 3d 1181 (W.D. Wash. 2019) .....................................................23, 24

*Pierce Cty. v. State*,
    185 P.3d 594, 618 (Wash Ct. App. 2008) .............................................................21

*Quedado v. Boeing Co.*,
    276 P.3d 365 (Wash. Ct. App. 2012) ...........................................................10, 20

*Rekhter v. Dep't of Soc. & Health Servs.*,
    323 P.3d 1036 (Wash. 2014) .............................................................................20

*Spooner v. Reserve Life Ins. Co.*,
    287 P.2d 735 (Wash. 1955) ...........................................................................7, 15

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – iii

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

*Stewart v. Chevron Chem. Co.*,
762 P.2d 1143 (Wash. 1988).............................................................................15, 19

*Swanson v. Liquid Air Corp.*,
826 P.2d 664 (Wash. 1992)............................................................................7, 11, 12

*Thompson v. St. Regis Paper Co.*,
685 P.2d 1081 (Wash. 1984)......................................................................7, 10, 15, 19

*Walter Implement, Inc. v. Focht*,
730 P.2d 1340 (Wash. 1987)...............................................................................17

*World Trading 23, Inc. v. Edo Trading, Inc.*,
No. 2:12-CV-10886-ODW(PJWx), 2013 WL 1210147 (C.D. Cal. Apr. 11,
2013) ...................................................................................................10

*Young v. Young*,
191 P.3d 1258 (Wash. 2008) (en banc)......................................................21, 23, 24

**RULES**

Fed. R. Civ. P. 12(b)(6).....................................................................................9

Fed. R. Civ. P. 12(c) ....................................................................................1, 9

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – iv

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

## I.   INTRODUCTION

Plaintiff's Second Amended Complaint—like the original Complaint and the First Amended Complaint that was the subject of Defendant's prior Rule 12(c) motion—fails to state a claim.  This Court granted Plaintiff leave to amend the deficient breach of contract and promissory estoppel claims in his First Amended Complaint.  The Court even provided specific guidance as to how Plaintiff could cure the deficiencies upon amendment, including by alleging facts that would: (1) negate the effective disclaimers; (2) show any inconsistency in the discretionary language of the Disaster Relief Policy (the "Policy"); (3) show Plaintiff was prevented from performing his regular duties during the pandemic; or (4) show he relied on the Policy.

Plaintiff's third attempt at asserting his allegations flatly fails to resolve the deficiencies mapped by the Court.   There are no facts that negate or are inconsistent with Defendant's repeated and effective disclaimers or the discretionary language in the Policy.  And Plaintiff does not, because he cannot, claim that he was prevented from performing his regular duties during the pandemic or that he relied on the Disaster Relief Policy.

Plaintiff's newly pled good faith and fair dealing claim fails because there is no contract.  Plaintiff's unjust enrichment claim fails because he has not pled that he conferred a benefit to TRC at his expense or that any injustice resulted from TRC paying Plaintiff his regular wages for performing his regular job duties and working his regular hours during the pandemic.

None of these defects are curable on amendment and Plaintiff should not be afforded a fourth bite at the apple.   Accordingly, Defendant respectfully requests that this Court enter judgment as a matter of law and dismiss this action with prejudice.

## II.   STATEMENT OF FACTS

### A.   TRC and Plaintiff's Employment

TRC is a subsidiary of healthcare provider DaVita Inc.  Dkt. #40 at p. 2, ¶ 3; Dkt. #41 at p. 2, ¶ 3.   TRC operates outpatient dialysis centers and acute inpatient dialysis centers that provide life-sustaining care to patients.   Dkt. #40 at p. 2, ¶¶ 5-6; Dkt. #41 at p. 2, ¶¶ 5-6.   Defendant's

CERTIFICATE OF SERVICE
(No. 2:20-cv-01733-JLR) –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

152761927.12

1    tens of thousands of employees, who are referred to as "teammates," are essential to providing

2    healthcare services to patients, either directly or in a supporting role.  Dkt. #41 at pp. 1, 12, ¶¶ 2,

3    52.   Throughout the COVID-19 pandemic, Defendant's treatment facilities have remained open

4    as an essential healthcare service and teammates have continued working both remotely and in the

5    workplace.  Dkt. #42 at pp. 2, 16, ¶ 4, Ex. 3.

6         Plaintiff is employed by TRC as an IT Specialist.  Dkt. #40 at p. 2, ¶ 7; Dkt. #41 at p. 2-3,

7    ¶ 7.  He has worked remotely full time since 2019 and continued to do so during the pandemic.

8    Dkt. #41 at pp. 2-3, 12, ¶¶ 7, 52.  Plaintiff has worked for TRC for thirteen years.  Dkt. #40 at p.

9    2, ¶ 7; Dkt. #41 at pp. 2-3, ¶¶ 7.

10   **B.    The Teammate Policies and the Disaster Relief Policy**

11        TRC provides its teammates, including Plaintiff, with DaVita's employee handbook titled

12   "Teammate Policies" (the "Teammate Policies").  Dkt. #40 at p. 3, ¶ 9; Dkt. #41 at p. 3, ¶ 9; *see*

13   *also* Dkt. #42 at pp. 1, 2, 6-8, 24-29, ¶¶ 2, 6, Exs. 1, 5 (relevant excerpts from the Teammate

14   Policies).  The Teammate Policies contain TRC's Disaster Relief Policy.  Dkt. # 40 at p. 7, ¶ 48;

15   Dkt. #41 at p. ¶ 48.  The Disaster Relief Policy is a way "[t]o incentivize teammates to continue to

16   assist with essential life-saving patient care and supporting functions during a natural disaster such

17   as a hurricane, wildfire, or ice storm … ."  Dkt. #41 at pp. 8-9, ¶ 36.  It was "created to address

18   situations where natural disasters or emergencies prevent facilities from operating or teammates

19   from … perform[ing] their regular duties," for example when there is "physical destruction of

20   clinics or people's homes, damaged roadways, collapsed bridges, etc." *Id*.  p. 13, ¶ 55.  The policy

21   provides that teammates may receive premium pay only when certain conditions are met.  Dkt.

22   #40 at pp. 8-9, ¶¶ 37-40; Dkt. # 41 at pp. 9-10, ¶¶ 37-40; *see also* Dkt. #42 at p. 2, ¶ 3, Ex. 2 (copy

23   of Disaster Relief Policy).

24   **C.    The Teammate Policies and Disaster Relief Policy Include Valid Disclaimers**

25        TRC teammates access the Teammate Policies through DaVita's intranet, VillageWeb.

26   Dkt. #41 at p. 3, ¶ 10.  TRC teammates annually acknowledge in the StarLearning Program that

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 2

152761927.12

they have read, understand, and will adhere to the Teammate Policies and any changes to the policies contained therein.  Dkt. #40 at p. 3, ¶ 10; Dkt. #41 at p. 3, ¶ 10; Dkt. 42 at p. 2, 20-22, ¶ 5, Ex. 4.  The "Teammate Acknowledgement" page in the StarLearning program states:

> As a DaVita teammate, I understand that I am expected to read, understand and adhere to our Company's policies.  I will familiarize myself with the material in the Teammate Policies, the Code of Conduct, and the DaVita Compliance Program, as well as any changes to them.  I understand that these policies and programs can be found on DaVita's VillageWeb and the People Services Page.  There will be a work station available to me upon reasonable request with access to the VillageWeb where these policies and programs may be found.  I understand I am governed by the contents of the Teammate Policies, and the Code of Conduct and the DaVita Compliance Program, and **I recognize that DaVita reserves the right to interpret, amend, modify, supersede or eliminate policies, practices, or benefits (except employment-at-will polices) described in these policies from time-to-time in its sole and absolute discretion**.  No oral amendment to any policy or benefit described herein shall be effective.
>
> **I understand that the Teammate Policies, the Code of Conduct, and the DaVita Compliance program and their contents are not intended to create any contractual or legal obligations, express or implied, between DaVita and its teammates;** however, these policies do set forth the entire employment arrangement between me and DaVita with respect to the at-will nature of my employment relationship with DaVita.  Unless otherwise specified in a written contract of employment signed by me and a duly authorized official of DaVita, I recognize that my employment has no specific term and is at the mutual consent of myself and DaVita.  Accordingly, either DaVita or I can terminate my relationship at any time, with or without cause, with or without notice.[1]

On January 8, 2020, Plaintiff signed the above acknowledgement of the January 2020 Teammate Policies, which is the operative handbook in this litigation.  Dkt. #41 at p. 5, ¶ 16; Dkt. #42 at pp. 2, 20-21, ¶ 5, Ex. 4.  In doing so, he acknowledged that the Teammate Policies and its contents do not "create any contractual or legal obligations" and that TRC may amend, modify, supersede or eliminate the Teammate Policies "at its sole and absolute discretion."  *Id*.

In addition to the disclaimer in the Teammate Acknowledgment, TRC expressly disclaims any intent to be contractually bound in the Teammate Policies themselves.  Dkt. #41 at p. 4, ¶ 14; Dkt. #42 at pp. 1-2, 8, 26, ¶¶ 2, 6, Exs. 1, 5.  The Teammate Policies state: "[t]he language used in these policies and any verbal statements made by management are not intended to constitute a

---

[1] Dkt. #40 at p. 4, ¶ 16; Dkt. #41 at pp. 3, 5, ¶¶ 10, 16; Dkt. #42 at pp. 2, 21, ¶ 5, Ex. 4 (emphasis added).

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 3

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1    contract of employment, either expressed or implied … ." Dkt. #41 at p. 4, ¶ 14; Dkt. #42 at pp.

2    1-2, 8, 26, ¶¶ 2, 6, Exs. 1, 5.

3         Similarly, TRC retains the right to modify or cancel the Teammate Policies in its sole

4    discretion:

5         "[t]he teammate policies have been provided to offer guidance in handling many
         issues, but the policies also allow for latitude in their application to individual

6         circumstances or as the needs of our business may warrant.  Except for the policy
         of at-will employment, any policy may be canceled or modified at any time, at

7         DaVita's sole discretion, with or without prior notice." *Id.*

8         In addition to the disclaimer that appears in the acknowledgement signed by Plaintiff and

9    the general disclaimer appearing at the beginning of the Teammate Policies, a *third* disclaimer

10   appears within the Disaster Relief Policy itself.  *See* Dkt. #42 at pp. 2, 11, ¶ 3, Ex. 2.  The Disaster

11   Relief Policy explicitly provides "[t]he language used in this policy is not intended to constitute a

12   contract of employment, either express or implied, to give teammates any additional rights to

13   continued employment, pay or benefits … ."  *Id.*

14   **D.    The Disaster Relief Policy Does Not Apply to the COVID-19 Pandemic**

15        Despite acknowledging the Teammate Policies and the Disaster Relief Policy do not create

16   a contract and that TRC may modify its policies at any time, Plaintiff now asks the Court to both

17   trigger and then enforce the Disaster Relief Policy as a contractual term of his employment and

18   seeks premium pay for hours he worked during the COVID-19 pandemic.  Just as he has since

19   2019, Plaintiff worked remotely as an IT Specialist during the pandemic and has not physically

20   reported to his assigned office.  Dkt. #41 at pp. 12, 14-15, ¶¶ 52, 59.

21        The Disaster Relief Policy, by its own unambiguous terms, does not apply to the COVID-

22   19 pandemic.  The Policy was created to "incentivize teammates to continue to assist with essential

23   life-saving patient care and supportive functions during a natural disaster such as a hurricane,

24   wildfire, or ice storm."  Dkt. #41 at pp. 8-9, ¶ 36.  The pandemic, which has existed for more than

25   a year now, is not the type of situation contemplated by the Policy, nor has the Policy been

26   triggered or invoked due to the pandemic.  Dkt. #41 at p. 15, ¶ 57.  Since the pandemic began in

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 4

152761927.12

early 2020, none of TRC's clinics have closed as a result of COVID-19, and teammates have continued to work either in the clinics or remotely.  Dkt. #41 at p. 12, ¶ 52.  Plaintiff was not prevented from working; he continued to perform his regular duties, work his regular hours, and work in his usual (remote) location.  Dkt. #40 at pp. 1-12, ¶¶ 53, 60; Dkt. #41 at pp. 12-14, ¶¶ 53-54, 58.  The Policy does not take effect unless certain conditions are met, and they have not been met here:

| Condition Required for The Disaster Relief Policy to Take Effect[2] | Condition Met? |
| --- | --- |
| *Emergency Time Frame Must Be Declared*<br><br>The Policy applies only during an "emergency time frame," which "will be identified on a case-by-case basis by local leadership (DVP, GVP, and PSD) and the Disaster Governance Council, dependent on the severity of the disaster and location." | *Condition Not Met*[3]<br><br>TRC's local leadership and its Disaster Governance Council never identified an "emergency time frame" for Plaintiff's assigned office or any other facility. |
| *Teammates Must Be Prevented from Performing Their Regular Duties*<br><br>The Policy "provides for pay continuance during an emergency time frame when a declared emergency or natural disaster *prevents teammates from performing their regular duties*." | *Condition Not Met*[4]<br><br>Plaintiff was not prevented from performing his regular duties. |
| *TRC Must Designate a Facility*<br><br>The Policy further specifies, "[i]f a *designated* facility or business office is open during the emergency time frame, teammates who report to their location and work their scheduled hours will be paid premium pay… ." | *Condition Not Met*[5]<br><br>Neither Plaintiff's assigned location nor any other facility or office was designated.  Plaintiff continued to work on a fully remote basis as he had prior to the pandemic and never reported to his assigned location. |

---

[2] *See* Dkt. #40 at p. 8, ¶ 37; Dkt. #41 at pp. 8-10, 11, 14, ¶¶ 36-39, 46, 59; Dkt. #42 at pp. 3, 10-11, 27-29, ¶¶ 3, 6 Exs. 2, 5 (emphasis added).

[3] Dkt. #40 at pp. 11, 12, ¶¶ 58, 63; Dkt. #41 at p. 11, 14-15, ¶ 46, 58, 59.

[4] Dkt. #40 at pp. 11, 12, ¶¶ 53, 60; Dkt. #41 at pp. 12, 13, 14, 15 ¶¶ 53, 54, 57-58, 61; Dkt. # 42 at pp. 2, 16, ¶ 4, Ex. 3.

[5] Dkt. #41 at pp. 14-15, ¶ 59.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

To avoid any doubt, TRC communicated to its teammates in March 2020 that the Policy did not apply to the pandemic:

> COVID-19 CRISIS
> The Disaster Relief Policy does not apply to the COVID-19 crisis.  The Disaster Relief Policy applies only when teammates are unable to perform their regular duties.  The policy is effective upon a decision by local leadership and the Disaster Governance Council that a declared emergency or natural disaster prevents our facilities from operating or prevents our teammates from working.  Under the COVID-19 crisis, our teammates are able to work and are essential in either in [sic] a supporting role for our health care workers or in actually providing healthcare services to patients.

Dkt. #40 at p.13, ¶ 66; Dkt. #42 at pp. 2, 13-18, ¶4, Ex. 3 (March 27, 2020 communication to all employees).  This communication also included the full text of the Policy, which reiterated that nothing in the policy "is intended to constitute a contract of employment, either express or implied."  *Id.*

### E.   Plaintiff's First Amended Putative Class Action Complaint

In his First Amended Complaint, Plaintiff sought premium pay under the Disaster Relief Policy on behalf of himself and a putative plaintiff class of all non-exempt employees from a putative defendant class of "all entities who are owned or controlled by DaVita" and have employees who are covered by the Teammate Policies and worked on or after January 31, 2020.  Dkt. #19 at pp. 7, 9, ¶¶ 37, 50.  Plaintiff asserted three claims: (1) breach of contract, (2) promissory estoppel, and (3) unjust enrichment.  Dkt. #19 at pp. 10-14, ¶¶ 61-89.

In support of his claims, Plaintiff relied solely on the conclusory allegation that he and putative class members relied on the Disaster Relief Policy and that they were justified in their reliance.  *See* Dkt. #19 at pp. 4, 12, ¶¶ 11, 74.  He did not allege any facts supporting these conclusions.  Plaintiff also asserted the Policy and TRC's alleged corporate culture of "We said. We did." and "promises as outlined in the Teammates Policies" induced him and putative class members to "change their position" and, oppositely, induced them to "stay on the job and not seek other employment."  *See* Dkt. #19 at pp. 2, 4, 11-12, ¶¶ 5, 13, 70, 72-73.  Plaintiff further alleged, again without any factual basis, that the Policy "is a method of attracting and retaining employees

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 6

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone: 206.359.8000
Fax:  206.359.9000

whose knowledge and skills are valuable to the business profit model developed by DaVita," but, notably, he did not allege (and does not allege now) the Disaster Relief Policy is why he came to TRC.  *Id.* at p. 5, ¶ 19.

## F.   This Court Dismissed Plaintiff's Claims for Breach of Contract and Promissory Estoppel with Leave to Amend

Defendant filed a motion for judgment on the pleadings on March 11, 2021.   Dkt. #22. The Court granted Defendant's motion in part, dismissing Plaintiff's breach of contract and promissory estoppel claims with leave to amend.  Dkt. #35 at p. 15.

The Court found Plaintiff failed to state a breach of contract claim (under an implied contract or equitable reliance theory) and a promissory estoppel claim, "[b]ecause the Teammate Policies handbook and the Disaster Relief Policy contain clear and conspicuous disclaimers that disavow any legal obligations on the part of TRC."  *Id.* at p. 12.   The Court also dismissed these claims because the statements in the Teammate Policies on which Plaintiff relies "do not constitute a clear and definite promise due to the provisions that make performance discretionary."  *Id.* at p. 13 (citing *Spooner v. Reserve Life Ins. Co.*, 287 P.2d 735, 738 (Wash. 1955)).  The Court did not reach the issue of conditions precedent in the breach of contract claim, noting Plaintiff did "not analyze the language in the Disaster Relief Policy and provide[d] no argument on whether he was 'prevented from performing his regular duties.'"  *Id.* at p. 12, n. 7 (citations omitted).  The Court also noted Mr. Hesketh had not alleged he relied on the Disaster Relief Policy, an element of *Thompson* equitable reliance and promissory estoppel.  *Id.* at p. 12, n. 6 (citations omitted).

The Court granted Plaintiff leave to amend and file a second amended complaint, explaining, "although the disclaimers are effective, there remains the possibility that Mr. Hesketh could plead facts to negate those disclaimers."  Dkt. #35 at pp. 14-15 (citing *Swanson v. Liquid Air Corp.*, 826 P.2d 664, 673 (Wash. 1992)).  "Moreover, if there is inconsistency regarding a policy's discretionary language, that may be sufficient to create a question of fact."  *Id.* (citing *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 478-79 (Wash. 2017)).

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 7

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

**G.     Plaintiff's Second Amended Complaint**

Plaintiff filed his Second Amended Complaint ("Complaint") on May 12, 2021.  Dkt. #40. The new Complaint reiterates Plaintiff's original breach of contract, promissory estoppel, and unjust enrichment claims and adds a claim for breach of the implied duty of good faith and fair dealing.  *See* Dkt. #40 at p. 20.    Plaintiff pleads no facts to cure the deficiencies in his First Amended Complaint identified in the Court's Order. Instead, he alleges:

- Facts about the corporate structure of TRC and DaVita (*Id.* at ¶¶ 3, 4, 8, 96);

- DaVita Teammates annually acknowledge the Teammate Policies and DaVita can identify who has and who has not acknowledged the policies (*Id.* at ¶¶ 12, 13, 18);

- Statements parsing the language of the disclaimers contained in the acknowledgement and Teammate Policies, alleging that teammates are "governed" by the policies, and that the policies contain the "entire employment arrangement" between DaVita and its teammates (*Id.* at ¶¶ 14-21, 31-32);

- Facts reiterating and parsing the language of the Teammates Policies and, specifically, the Disaster Relief Policy (*Id.* at ¶ 28, 30, 35-40);

- The Disaster Relief Policy was created in 2017 and changed in 2018 to read, "A declared emergency or natural disaster shall be proclaimed by either the President of the United States, a state Governor or other elected official, or [instead of "and"] if local leadership (DVP/Palmer) deems it appropriate."  (*Id.* at ¶¶ 42-47, 56);

- DaVita's policies created an expectation of fair treatment, and corporate culture, values (i.e., Integrity), atmosphere, and statements of "trust us" and "We Said, We did" led employees to believe TRC would abide by the policies (*Id.* at ¶¶ 21-27, 33);

- DaVita's pay policies were created to incentivize teammates to work under potentially unpleasant, inconvenient, or dangerous conditions (*Id.* at ¶ 34);

- "Management personnel of TRC[] expect both at will employees and management employees to be familiar with, rely upon and follow (be "governed by") the policies in the Teammates handbook."  (*Id.* at ¶ 29);

- Facts generally about the COVID-19 pandemic (*Id.* at ¶¶ 48-51);

- Facts about Defendant's operations during the pandemic:

  - "Also, around March 13, 2020, the Defendant began closing parts or all of its business offices and employees began working remotely rather than at their offices."  (*Id.* at ¶ 52);

- "Until March 31, 2020 and beyond, the COVID-19 Crisis and the national emergency that it spawned prevented some, but not all DaVita teammates from performing their regular duties." (*Id.* at ¶ 53; *see also* ¶ 54);

- That the Disaster Relief Policy was not activated due to the pandemic and no emergency time frame was declared (*Id.* at ¶¶ 55, 57-67).

None of these new allegations cure the deficiencies highlighted in the Court's Order.

Even more critically, Plaintiff fails to make the kind of allegations necessary to salvage his claims. He does not allege (1) the existence of any statements, communications, conduct or documents inconsistent with the express disclaimers; (2) the existence of any statements, communications, conduct or documents inconsistent with or negating the discretionary language in the Disaster Relief Policy; (3) any facts showing that he (or any teammates) relied on the Policy—the Complaint contains the same conclusory allegations on this point as the first; and (4) that he was prevented from performing his duties. *See* Dkt. #19 at pp. 2, 3 ¶¶ 5, 9; Dkt. #40 at pp. 3-4, ¶¶ 8, 12. These defects cannot be cured on amendment, because no such facts exist.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A party is entitled to judgment under Rule 12(c) when the pleadings demonstrate there are no material facts in dispute and where the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The standard for dismissing claims under Rule 12(c) is "substantially identical" to the Rule 12(b)(6) standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Chavez v. United States*, 683 F.3d 1002, 1008 (9th Cir. 2012). The court must ask "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054-55 (9th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). The court need not accept as true a legal conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

In ruling on a motion for judgment on the pleadings, "[t]he court may consider materials attached to or incorporated by reference in the pleadings."  Dkt. #35 at pp. 5-6, n.3 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *World Trading 23, Inc. v. Edo Trading, Inc.*, No. 2:12-CV-10886-ODW(PJWx), 2013 WL 1210147, at *1 (C.D. Cal. Apr. 11, 2013)).  Accordingly, this Court may consider the five documents attached to Defendant's Answer.[6]  *See id.* (citing *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011)).

## IV.    ARGUMENT

### A.    Plaintiff's Breach of Contract and Promissory Estoppel Claims Fail

Plaintiff's Second Amended Complaint fails to address the deficiencies expressly identified by this Court.  Dkt. #35 at p. 14.  The breach of contract and promissory estoppel claims fail for the same reasons as before.  Plaintiff's Count 1 (breach of contract (implied contract and *Thompson* equitable reliance)) and Count 2 (promissory estoppel)[7] fail because (1) Defendant repeatedly and effectively disclaimed all contractual obligations and Plaintiff failed to plead any facts to negate those disclaimers; and (2) the Policy's discretionary language fails to create an enforceable promise and Plaintiff failed to plead any facts showing inconsistency in that language. As such, these claims should be dismissed with prejudice.

### 1.    There Are No Facts to Negate the Effective Disclaimers

This Court explained, "statements made in employee handbooks are not binding if the employer provides an appropriate written disclaimer."  Dkt. #35 at p. 7 (citing *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1158 (W.D. Wash. 2014).  An employer therefore "escape[s] obligation if it states 'in a conspicuous manner' in the written materials that 'nothing contained therein is intended to be part of the employment relationship' . . . or if the employer specifically reserves a right to modify the policies, or writes them in a manner that retains discretion to the

---

[6] *See e.g.*, Dkt. #40 at pp. 3-5, 7, 8, 13 ¶¶ 9, 15-19, 28, 37, 65-66; *see generally* Dkt. #42 (Declaration of Shawn Zuckerman in support of Defendant's Answer to the Second Amended Complaint and attached exhibits).

[7] As this Court noted in its Order, "[i]t is unclear whether Mr. Hesketh seeks to pursue an independent promissory estoppel claim or simply the promissory estoppel exception under the *Thompson* framework," but both claims fail for the same reason.  Dkt. #35 at p. 12.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1    employer." *Id.* (citing *Quedado v. Boeing Co.*, 276 P.3d 365, 369 (Wash. Ct. App. 2012)); *see*

2    *also Kuest v. Regent Assisted Living, Inc.*, 43 P.3d 23, 29 (Wash. Ct.  App. 2002).  TRC did each

3    of those things multiple times:

4    • There is no dispute the disclaimers are in writing and are conspicuous.  According to
       Plaintiff, "DaVita's contract disclaimers are written everywhere."  Dkt. #41 at p.4, ¶ 14.
5
6    • There is no dispute the disclaimers affirm that the Teammate Policies are provided as
       guidance, and the contents are not intended to create any contractual or legal obligations.

7    • There is no dispute TRC retained discretion to modify or delete the policies.

8    • There is no dispute TRC retained the discretion as to whether to implement the Disaster
       Relief Policy.
9

10   Dkt. #35 at pp. 2-3, 9-10.  This Court thus found, "the language contained in the Teammate Policies

11   handbook rise[s] to the level of a clear and conspicuous disclaimer of contractual rights that is

12   effective as a matter of law."  Dkt. #35 at p. 9.  "Because the disclaimers are effective, Plaintiff

13   must "plead facts to negate those disclaimers."  *Id.* at p. 14 (citing *Swanson*, 826 P.2d at 673).

14        He does not.  Plaintiff does not add any allegations TRC or management made any

15   statement inconsistent with the Teammate Policies' express disclaimers.  Nor does he allege TRC

16   or management made any statements inconsistent with the Disaster Relief Policy's discretionary

17   language.  The Second Amended Complaint simply reiterates many of the conclusory allegations

18   previously before this Court.  The facts about which Plaintiff adds new detail have no bearing on

19   the disclaimers' fatal effect.

20        Disclaimers are only negated by clear, specific, and detailed representations about actions

21   that must be taken by the employer despite language in the disclaimer.  *See Swanson*, 826 P.2d at

22   675.  For example, "*detailed* grievance or disciplinary procedures" that *must* be followed before

23   someone is fired may negate a disclaimer stating someone is employed at will.  *Id.* at 674-75

24   (emphasis added).  Similarly, statements discussing an employee's salary "in *specific periodic*

25   *terms*[] may be found to override disclaimers defining the employment relationship as terminable

26   at the will of either party."  *Id.* at 675 (emphasis added).

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 11

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

The facts of *Swanson* exemplify the rule.  There, the court held material issues of fact existed as to whether the disclaimer was effectively communicated to employees and whether the employer's inconsistent representations about employees' at-will status negated a disclaimer in the employee benefit manual.  *Id.* at 664.  Key to this determination was the fact a separate "Memorandum of Work Conditions" was issued to select employees. That memorandum included a provision that certain employee acts could result in immediate dismissal without notice, but at least one warning would be given for all other misconduct.  *Id.*  Corporate officials held meetings with the employees who received the memorandum and stated "the company would abide by the rules in the agreement and that no union representation would be necessary." *Id.*  The company also distributed a driver's handbook which stated fighting was prohibited but did not contain the warning required by the memorandum that fighting was cause for immediate dismissal.  *Id.*

None of the factors that cast doubt on the effectiveness of the disclaimer in *Swanson* are present here.  First, the disclaimer in *Swanson* appeared in a separate document from the promise the plaintiff sought to enforce.  *See Swanson*, 826 P.2d at 676.  Here, the disclaimer appears repeatedly within the Teammate Policies, including in the text of the Disaster Relief Policy—the precise policy Plaintiff seeks to enforce as an alleged contract term. Dkt. #41 at p. 3, ¶ 9; Dkt. #42 at pp. 2, 11, 28, ¶¶ 3, 6, Exs. 2, 5.  Second, in *Swanson*, "detailed procedures" were outlined that undercut the employer's disclaimer stating employment was at will.  826 P.2d at 676.  No such separate, more detailed procedures exist here.  Instead, the more specific text of the Disaster Relief Policy *reinforces* the disclaimers because it too states DaVita retains discretion with respect to the Policy. Dkt. #42 at pp. 2, 11, 28, ¶¶ 3, 6, Exs. 2, 5; *see also Nelson v. Southland Corp.*, 894 P.2d 1385 (Wash. Ct. App. 1995) (upholding efficacy of disclaimer where progressive discipline policy "was implemented at the supervisor's discretion").  Finally, in *Swanson*, management made specific statements it would abide by the progressive discipline procedures outlined in the memorandum.  *Id.* at 664.  Again, Plaintiff does not allege such statements exist here.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 12

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1    Ultimately, "the crucial question is whether the employee has a reasonable expectation the

2    employer will follow the [] procedure [or policy at issue], *based upon the language used in stating*

3    *the procedure* and the pattern of practice in the workplace." *Payne v Sunnyside Cmty. Hosp.*, 894

4    P.2d 1379, 1384 (Wash. Ct. App. 1995) (emphasis added).   Contrary statements negate disclaimers

5    where, as in *Payne*, they use mandatory language like "the steps *to be followed in* … progressive

6    discipline." *Id.* at 1384 (emphasis added).   Corporate practice must also be mandatory to negate a

7    disclaimer.   In *Payne*, management told the plaintiff she "needed" to follow the progressive

8    discipline procedures when disciplining employees, and department heads were similarly told they

9    "needed" to follow such procedures.   *Id.*   Here, the Disaster Relief Policy does not contain specific,

10   mandatory language. Instead, it retains discretion to TRC to determine whether to trigger the policy

11   on a "case-by-case basis . . . dependent on the severity of the disaster and location."   Dkt. #41 at

12   pp. 9, 10, ¶¶ 37, 39.   There are no allegations that management represented TRC "needed to" or

13   was required to declare an emergency time frame; indeed, the Policy itself disclaims any intent to

14   be contractually bound.   Dkt. #42 at pp. 2, 11, 28, ¶¶ 3, 6, Exs. 2, 5.

15   As outlined in section II.G., above, none of Plaintiff's new allegations contain facts that

16   negate the disclaimers.   For example, the Complaint identifies language in the disclaimers

17   themselves—which were previously before this Court and are not new facts[8]—which are not

18   contradictory.   The Complaint discusses that employees are "governed by the contents" of the

19   policies, but "the contents" *include the disclaimers* disavowing legal obligations and retaining

20   absolute discretion to TRC.   Dkt. #40 at pp. 4-6, ¶¶ 15-23.

21   Similarly, the Complaint notes the disclaimers state in part that the policies "set forth the

22   entire employment arrangement between [Plaintiff] and DaVita *with respect to the at-will nature*

23   of [his] employment relationship."   *Id.* (emphasis added).   As an initial matter, the "at-will nature"

24   of Plaintiff's employment is not at issue in this litigation.[9]   Regardless, while the disclaimers

25   ───────────────

[8] Dkt. #40 at pp. 3-4, ¶ 10.

26   [9] It is also undisputed that Plaintiff and teammates are at-will employees.  *See* Dkt. #40 at pp. 8, 11, 18, ¶¶ 36, 54, 107; Dkt. #41 at p.13, ¶ 54.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 13

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-99
Phone: 206.359.8000
Fax: 206.359.9000

1  confirm the at-will nature of Plaintiff's employment can only be modified in writing signed by a

2  senior executive officer of the company, they also expressly provide DaVita can modify or delete

3  the *other* policies at any time: "The Teammate Policies have been provided to offer guidance in

4  handling many issues, but the policies allow for latitude in their application to individual

5  circumstances or as the needs of the business may warrant.   Except for the policy of at-will

6  employment, any policy may be cancelled or modified at any time, at DaVita's Sole discretion,

7  with or without prior notice."  Dkt. #41 at p. 4, ¶ 14; Dkt. #42 at pp. 8, 26, ¶¶ 2, 6, Exs. 1, 5.

8          Similarly, Plaintiff's allegations that the policies created an expectation of fair treatment

9  and that the corporate culture, values, and atmosphere led employees to believe TRC would abide

10  by its policies do not negate the express disclaimers within those policies.    Plaintiff alleges

11  DaVita's general corporate culture of "Integrity" and "we do what we say"—which was previously

12  before this Court and does not present new facts[10]—is contradictory and inconsistent with the

13  disclaimers.   *See* Dkt. #40 at p. 6, ¶¶, 21, 24, 26.   But these are generalized corporate concepts,

14  not the type of detailed, specific statements or practices that contradict express disclaimers.  And

15  the disclaimers say TRC does not intend to create a contractual obligation and TRC consistently

16  repeats that very thing: there is no contractual obligation.   Similarly, the disclaimers say TRC

17  retains discretion with respect to the Teammates Policies and TRC exercised that discretion.

18          Plaintiff's remaining allegations similarly fail to negate the disclaimers:

19  • New allegations about DaVita and TRC's corporate structure have no bearing on the
20    disclaimers and are irrelevant to Plaintiff's claims.

21  • To the extent allegations that DaVita requires teammates to acknowledge its policies are
    relevant, the acknowledgment itself contains an unambiguous disclaimer.

22  • The allegations reiterating the language of the policies and acknowledgement are parsed to
23    avoid critical portions that doom Plaintiff's claims.

24  • The allegation about a 2018 change from an "and" to an "or" is irrelevant to the disclaimers,
    and, regardless, reinforces the discretionary nature of the Policy.

25

26  ------------------------------------
[10] Dkt. #19 at p. 2, ¶ 5.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 14
152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

- Conclusory allegations that the pay policies were created to incentivize teammates to work under inconvenient or dangerous conditions do not create a legal obligation where express disclaimers say otherwise.

- Allegations that TRC management personnel expected teammates to be familiar with and be governed by the policies do not help Plaintiff.  They only reinforce the point employees were aware of—and governed by—the disclaimers contained in the policies.

- Allegations that the Disaster Relief Policy was not activated due to the pandemic and no emergency time frame was declared have no bearing on the disclaimers' efficacy, and reinforce the conditions precedent were not met.

- Allegations about the pandemic in general and TRC's operations during the pandemic are also irrelevant to the disclaimer analysis.

Because Plaintiff did not plead any "facts to negate th[e] disclaimers," Plaintiff's breach of contract and promissory estoppel claims must fail as a matter of law.

### 2.  There Are No Inconsistencies in the Policy's Discretionary Language

Plaintiff's breach of contract and promissory estoppel claims fail for the separate reason that the Policy makes performance entirely discretionary on TRC's part and therefore does not contain an enforceable promise under either theory of liability.  *See* Dkt. #35 at p. 11 (citing *Stewart v. Chevron Chem. Co.*, 762 P.2d 1143, 1145 (Wash. 1988) ("A 'supposed promise' may be illusory if it is 'discretionary on the part of the promisor.'")); *Id.* at pp. 12-13 (citing *Spooner*, 287 P.2d at 738 (same)); *Havens v. C&D Plastics, Inc.*, 876 P.2d 435, 443 (Wash. 1994) (promissory estoppel requires a "clear and definite promise"); *see also Hollenback v. Shriners Hosp. for Children*, 206 P.3d 337, 346 (Wash. Ct. App. 2009) (citations omitted) ("[W]here the employee handbook gives the employer discretion when applying disciplinary procedures, the manual does not provide a promise of specific treatment in a specific circumstance."); *Thompson v. St. Regis Paper Co*, 685 P.2d 1081, 1088 (Wash. 1984) ("[P]olicy statements as written may not amount to promises of specific treatment and merely be general statements of company policy, and thus, not binding.").

As this Court explained, the Policy makes performance optional and discretionary:

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 15

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1

2

3

4

5

> The Disaster Relief Policy is not automatically triggered upon the proclamation of an emergency or natural disaster by government officials.  Instead, the company must determine the "affected facility," "business office," and the emergency time frame during which premium pay applies.  These determinations are made "on a case-by-case basis" and are "dependent on the severity of the disaster and location."  These statements give the employer discretion in applying the Disaster Relief Policy and thus do not provide a promise of specific treatment in a specific circumstance as a matter of law.

6

7

8

Dkt. #35 at pp. 11-12 (citation omitted).  Relying on this language, this Court also found the Teammate Policies "do not constitute a clear and definite promise due to the provisions that make performance discretionary." *Id.* at pp. 12-13.

9

10

11

12

13

14

15

16

17

18

Plaintiff must therefore plead facts showing "inconsistency regarding a policy's discretionary language."  *Id.* at p. 14.  The Second Amended Complaint alleges no such inconsistency.[11]  In fact, the majority of Plaintiff's new allegations have no bearing on the discretionary language in the Disaster Relief Policy. *See supra* Sections II.G & IV.A.1.  Plaintiff attempts to plead around this by parsing the language of the Teammate Policies, including the Disaster Relief Policy itself.  *See e.g. id.*, ¶¶ 28, 30, 35-40.  But when read as a whole—as it must be—the Disaster Relief Policy itself is unambiguously discretionary.  Moreover, other language in the Teammate Policies reinforces that TRC retains discretion to apply the policies as it sees fit: "the policies also allow for latitude in their application to individual circumstances or as the needs of our business may arise."  Dkt. #42 at pp. 1, 2, 8, 26, ¶¶ 2, 6, Exs. 1, 5.

19

20

Accordingly, Plaintiff's breach of contract and promissory estoppel claims fail as a matter of law.

21

22

23

24

25

26

---

[11] The Second Amended Complaint includes allegations that the original September 2017 version of the policy contained language the emergency or natural disaster could be declared by an elected official "and" by local leadership, which is undisputed.  Dkt. #40 at p. 9, ¶ 43; Dkt. #41 at p. 10, ¶ 43.  This language was changed in January 2018 to the word "or" so that local leadership could make the determination to declare an emergency or natural disaster even if there was no proclamation from the President of the United States, a state Governor or other elected official.  Dkt. #40 at p. 10, ¶ 44; Dkt. #41 at pp. 10-11, ¶ 44.  This change reinforces, as opposed to undercuts, the discretionary ("case-by-case") nature of the policy.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 16

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

**B.     Plaintiff's Breach of Contract Claim Otherwise Fails Because the Conditions Precedent Never Occurred**

Even if the Second Amended Complaint did address the deficiencies this Court identified, Plaintiff's breach of contract claim would still fail as a matter of law because the conditions precedent never occurred, so TRC had no duty to perform.

As this Court explained, the Disaster Relief Policy includes a condition precedent: "The Disaster Relief Policy is not automatically triggered upon the proclamation of an emergency or natural disaster by government officials.  Instead, the company must determine the 'affected facility,' 'business office,' and the emergency time frame during which premium pay applies." Dkt. #35 at pp. 11-12 (citations omitted); *see also Lokan & Assocs., Inc. v. Am. Beef Processing, LLC*, 311 P.3d 1285, 1290 (Wash. Ct.  App. 2013) ("A condition precedent is a fact or event included in a contract that must take place before a right to immediate performance arises.") Further, the plain language of the Policy evidences a clear intent to offer premium pay only during a declared emergency time frame "when" employees are prevented from working. Dkt. #42 at p. 2, 10, 27-28, ¶¶ 3, 6, Exs. 2, 5.  This Court did not previously reach the issue of conditions precedent, noting Plaintiff did "not analyze the language in the Disaster Relief Policy and provide[d] no argument on whether he was 'prevented from performing his regular duties.'"  Dkt. #35 at p. 12, n.  7 (citations omitted).

Plaintiff still has not alleged the conditions precedent occurred.  *See Walter Implement, Inc. v. Focht*, 730 P.2d 1340, 1342 (Wash. 1987) (plaintiff bears the burden of alleging condition precedent was met).  No emergency time frame, affected facility, or business office was identified for the pandemic, including Plaintiff's assigned office.[12]  Dkt. #40 at pp. 11-12, ¶¶ 57-58, 60-61; Dkt. #41 at pp. 14-15, ¶ 57-59, 61.  It is undisputed this condition was not met.

Moreover, Plaintiff continued to perform his regular duties throughout the pandemic.  Dkt. #41 at p. 13, ¶ 54; *see also id.* at pp. 14-15, ¶ 59 ("During the COVID-19 pandemic, teammates

---

[12] Even though Plaintiff has an assigned office, he works on a fully remote basis.  Dkt. #41 at p. 2-3, ¶ 7.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

continued to perform their regular duties and facilities remained open to provide essential healthcare services.").   Plaintiff now contends that even though *he* was not prevented from performing his regular duties, "[t]here were employees who had their location and work affected by the pandemic, and therefore the condition was satisfied." Dkt. #40 at p. 12, ¶ 62.  Even if this conclusory allegation were true, the Policy isn't triggered by employees having "their location and work affected," but "only when teammates are *unable to perform their regular duties*" and upon TRC's decision to trigger the Policy.  Dkt. #41 at 14, ¶57; Dkt. #42 at pp. 2, 10-11, 27-29, ¶¶ 3, 6, Exs. 2, 5.  It is undisputed teammates, including Plaintiff, are able to perform their regular duties during the pandemic.   Dkt. #41 at p.12, ¶ 53.   Indeed, "DaVita's patient-facing teammates are uniquely qualified to continue working during a health care emergency like COVID-19 because complying with infectious disease protocols is part of their training and job duties.   Such teammates are trained to work with patients who may have HIV/AIDS, hepatitis, and other infectious or contagious diseases." *Id*.   Further, nowhere does Plaintiff allege that *he* was prevented from performing his regular duties or that *his* location (which was fully remote before the pandemic) was affected.

Plaintiff does not allege the conditions precedent occurred. He cannot show TRC declared an "emergency time frame" or that the COVID-19 pandemic prevented him from doing his job. As such, his breach of contract claim fails for this separate reason.[13]

## C.   Plaintiff's Equitable Reliance and Promissory Estoppel Claims Otherwise Fail Because Plaintiff Cannot Show Justifiable Reliance as a Matter of Law

Plaintiff's equitable reliance/promissory estoppel claims fail as a matter of law because Plaintiff failed to plead that he relied on the Policy or facts from which a reasonable juror could conclude the reliance was justifiable.

---

[13] Because this Court found the Policy's discretionary language does not create an enforceable promise, Defendant does not address its prior arguments that Plaintiff also cannot prove mutual assent or consideration.  *See* Dkt. #22 at p.19-23; Dkt. #32 at pp.12-13.  Defendant incorporates those arguments by reference to the extent necessary.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 18

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1    As this Court noted, Mr. Hesketh did not allege in his First Amended Complaint that he

2    relied on the Disaster Relief Policy.  Dkt. #35 at p. 12, n. 6 (citations omitted); *see also Bulman v.*

3    *Safeway, Inc*., 27 P.3d 1172, 1180 (Wash. 2001) (plaintiff must pled justifiable reliance for an

4    equitable reliance claim); *Baker*, 994 F. Supp. 2d at 1159 (quoting *Bulman*, 27 P.3d at 1176)

5    (granting summary judgment where no evidence employee relied on promises in employee

6    handbook, explaining, [t]he employee must show reliance on the specific provision at issue—'it is

7    *not enough* for a plaintiff […] to simply be able to rely upon the general *atmosphere* of his or her

8    work place'") (emphasis in original); *Corbit v. J.I. Case Co*., 424 P.2d 290, 300-01 (Wash. 1967)

9    (a plaintiff must plead justifiable reliance for a promissory estoppel claim).

10    Plaintiff's Second Amended Complaint does not allege reliance either.  *See* Dkt. #40.  As

11    in the First Amended Complaint, the only alleged "reliance" is that Plaintiff continued to work

12    (Dkt. #40 at p. 11, ¶ 54; *see also id.* at p. 21, ¶ 127), but Plaintiff does not allege he continued to

13    work *in reliance on* the policy, and regardless, continuing to work, on its own, is not a change in

14    position.  *See Baker*, 994 F. Supp. 2d at 1160 ("An employee relies on a promise if she is 'induced

15    thereby to remain on the job and not actively seek other employment.'") (quoting *Thompson*, 685

16    P.2d at 1088); *see also Kimbro v. Atl.  Richfield Co.,* 889 F.2d 869, 879-80 (9th Cir. 1989) (no

17    reliance where there was "no evidence [Plaintiff's] interpretation of the [handbook] actually

18    induced him to remain" at the company).

19    Nor does Plaintiff allege whether or when he had actual knowledge of the Policy.  *See*

20    *Stewart*, 762 P.2d at 1146 (finding an employee could not have "justifiably relied" on a policy of

21    which he was not aware until after he was discharged); *Bulman*, 27 P.3d at 1179 (overturning jury

22    verdict where plaintiff failed to demonstrate any pre-termination familiarity with promises).

23    Further, Plaintiff knew as early as late March 2020 that he was not receiving premium pay, and

24    yet he continued to work for TRC with knowledge TRC would not be paying premium pay.  Dkt.

25    #41 at p. 14, ¶ 57.

26

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 19

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

Even if Plaintiff was aware of the Disaster Relief Policy and relied on it to his detriment, such reliance was not justified because the Policy itself disclaims any legal obligation or additional rights to pay.  Dkt. #35 at p. 3, 9; Dkt. #41 at p. 9, ¶ 36; Dkt. #42 at pp. 2, 11, 28, ¶¶ 3, 6, Exs. 2, 5.  Nor would reliance be justifiable because TRC retained discretion to decide on a "case-by-case basis" whether to offer premium pay.  *Quedado*, 276 P.3d at 371 (no justifiable reliance where employment policies were applied on a "case-by-case basis").

Accordingly, Plaintiff failed to state a legally cognizable equitable reliance or promissory estoppel claim as a matter of law because he has not shown (and cannot show) justifiable reliance.

### D.   Plaintiff Fails to State a Claim for Breach of the Implied Duty of Good Faith and Fair Dealing as a Matter of Law

Plaintiff cannot state a claim for breach of the implied duty of good faith and fair dealing because he fails to establish the existence of a contract.[14]  Although there is an implied duty of good faith and fair dealing in every contract under Washington law, the Washington Supreme Court has "consistently held there is no 'free-floating' duty of good faith and fair dealing that is unattached to an existing contract."  *See, e.g.*, *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004) (citing *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)); *see also NOVA Contracting, Inc. v. City of Olympia*, 426 P.3d 685, 691 (Wash. 2018) ("A claim of breach of the covenant of good faith and fair dealing sounds in contract, not equity.") (citing *Rekhter v. Dep't of Soc. & Health Servs.*, 323 P.3d 1036 (Wash. 2014)).  Claims for breach of good faith and fair dealing "rest[] on the assumption" a party has contractual duties.  *See Hard 2 Find Accessories, Inc. v Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1173-74 (W.D. Wash. 2014)

---

[14] This Court dismissed Plaintiff's breach of contract and promissory estoppel claims with leave to amend, while denying as moot Plaintiff's pending motion for leave to amend (which included a request to include the breach of the implied duty of good faith and fair dealing claim). Dkt. #35 at pp. 1, 14-15.  To the extent the Court's Order granted leave to amend only the breach of contract and promissory estoppel claims and did not contemplate Plaintiff adding an entirely new claim, Plaintiff's new claim for breach of the duty of good faith and fair dealing is not properly before this Court. *See* Fed. R. Civ. P. 15(a)(2) (requiring a party secure the opposing party's written consent or the court's leave to amend, which Plaintiff did not do here).  But if the new claim is properly before the Court, it should be dismissed for the reasons described in this section.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 20

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1   (dismissing claim for breach of good faith and fair dealing, explaining "[b]ecause the Court has

2   determined that no … contractual duties existed, there is also no duty to perform such obligations

3   in good faith").   Where, as here, there are no contractual duties, there cannot be a duty to perform

4   any obligations in good faith.  *See id.*

5         As discussed above—and as this Court previously found—the Disaster Relief Policy is not

6   a contract.  *See* Dkt. #35 at 12; *supra* Section IV.A.  Accordingly, Plaintiff's new claim for breach

7   of good faith and fair dealing necessarily fails as a matter of law.

8   **E.      Plaintiff Fails to State a Claim for Unjust Enrichment as a Matter of Law**

9         Plaintiff's claim for unjust enrichment fails as a matter of law.  Unjust enrichment "arises

10  from an implied legal duty or obligation and is not based on a contract between the parties, or any

11  consent or agreement."  *Pierce Cty. v. State*, 185 P.3d 594, 618 (Wash. Ct. App. 2008) (citing

12  *Chandler v. Wash. Toll Bridge Auth*., 137 P.2d 97, 107 (Wash. 1934)).   TRC's intention,

13  agreement, will or design is irrelevant.  *Byram v. Thurston Cty.*, 251 P. 103, 107 (Wash. 1926),

14  *modified* 252 P. 943 (1927).  On the contrary, "[p]ayment is authorized under this theory when a

15  person performs the noncontractual duty of another to supply necessaries to a third person and

16  where one performs another's duty to the public, so long as the service was performed with the

17  intent to seek remuneration for it."  *Pierce*, 185 P.3d at 618.  To show unjust enrichment, Plaintiff

18  must allege: "(1) the defendant received a benefit, (2) the received benefit is at the plaintiff's

19  expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without

20  payment."  *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (en banc); Dkt. #35 at p. 13.

21        Plaintiff cannot show he conferred a benefit to TRC "at Plaintiff's expense," nor can he

22  show any injustice resulted from TRC paying Plaintiff his regular wages for performing his regular

23  job duties and working his regular work hours during the pandemic.  As such, he fails to state an

24  unjust enrichment claim as a matter of law.

25

26

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 21

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone: 206.359.8000
Fax:  206.359.9000

1          **1.      TRC Did Not Receive a Benefit "at Plaintiff's Expense"**

2          Mr. Hesketh cannot show TRC received a benefit "at Plaintiff's expense."  *Young*, 191

3   P.3d at 1262.  Plaintiff's contention that TRC received the benefit of his labor in exchange for his

4   regular pay falls short for two reasons: (1) Plaintiff did not perform any additional services other

5   than the agreed services for the agreed rate; and (2) Plaintiff had no right to receive premium pay

6   for his services, and thus could not have conferred the right to work without premium pay to TRC.

7          First, there is no benefit conferred at a plaintiff's expense where the alleged benefit

8   conferred (i.e. labor) was paid at the agreed rate.  *See Mastaba, Inc. v. Lamb Weston Sales, Inc*.,

9   23 F. Supp. 3d 1283, 1295-96 (E.D. Wash. 2014) (where the alleged benefit (i.e., services) was

10  contemplated within the parties' original bargained-for exchange (i.e., payment), unjust

11  enrichment does not apply); *Chandler*, 137 P.2d at 103 (finding no unjust enrichment because it

12  related to an agreement whereby plaintiff was performing services in exchange for payment, noting

13  the plaintiff "may not bring an action [for unjust enrichment] relating to the same matter").  For

14  example, in *Mastaba*, Lamb Weston, a potato product producer, entered into a service agreement

15  to be the sole supplier of potato products to Mastaba, a potato product broker in the Philippines,

16  and paid Mastaba a fee per net pound of sales.  23 F. Supp. 3d at 1288.  Mastaba claimed that

17  Lamb Weston was unjustly enriched by it establishing the Philippine frozen potato market in the

18  course of selling Lamb Weston's potato products.  *Id.* at 1295.  In granting summary judgment,

19  the court found the benefit conferred (establishing the potato market) "was necessarily done

20  pursuant to Mastaba's service agreements with Lamb Weston for which Mastaba received

21  payment." *Id.* at 1296.  Mastaba could not assert an unjust enrichment claim as a matter of law for

22  "negotiating sales and sales contracts" because that was covered by the commissions for sales

23  provided in the agreement.  *Id*.  Where the plaintiff already received payment for the benefit, there

24  is no benefit "without payment" or at "plaintiff's expense."

25         In order to state a claim, Plaintiff must show some additional right or benefit conferred to

26  and received by TRC beyond his bargained-for labor.  He cannot.  It is undisputed Mr. Hesketh

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 22

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1   continued to perform his regular job duties and work his regular hours during the pandemic, and

2   TRC compensated him his regular pay for that work.  There are no allegations Plaintiff performed

3   any additional services not contemplated within his regular job duties.  Dkt. #41 at p. 13, ¶ 54.

4   Any work Plaintiff performed during the pandemic was necessarily done pursuant to his regular

5   employment for which he received payment.  Thus, any benefit received by TRC was not at

6   Plaintiff's expense—he was compensated—and was not "without payment" as a matter of law.

7        Second, because Plaintiff never had any right to premium pay for his services, he cannot

8   be said to have conferred a benefit to TRC when he worked for regular pay during the pandemic.

9   "[A] plaintiff alleging unjust enrichment must demonstrate a right or benefit properly belonging

10  to the plaintiff that was conferred upon the defendant."  *BOFI Fed. Bank v. Advance Funding LLC*,

11  No. 14-CV-00484-BJR, 2015 WL 5008860, at *2 (W.D. Wash. Aug. 20, 2015).  "The core of

12  unjust enrichment is the notion that a defendant has received a right or benefit that *belonged to the*

13  *plaintiff.*"  *Id*. (*citing Young*, 191 P.3d at 1258) (emphasis in original); *see also Pengbo Xiao v.*

14  *Feast Buffet, Inc*., 387 F. Supp. 3d 1181, 1185 (W.D. Wash. 2019) ("[U]njust enrichment requires

15  that a defendant received a right of benefit that *belonged to the plaintiff*.") (emphasis in original).

16  For example, in *Pengbo Xiao*, a Chinese restaurant recruited Chinese-speaking waitstaff from

17  outside of Washington, and the restaurant promised to compensate the plaintiffs for travel costs to

18  relocate to Washington.  387 F. Supp. 3d at 1185.  In granting summary judgment, the court found

19  that because the plaintiffs "never possessed any right to the cost of a plane ticket—rather, the

20  alleged promise of reimbursement was used as an incentive for Plaintiffs to accept a job with [the

21  restaurant] and relocate to Washington,"—the plaintiffs could not show they conferred a benefit

22  to their employer that belonged to them.  *Id*. at 1191.  The court explained, "even if [the restaurant]

23  orally promised to reimburse them the cost of their plane tickets, Plaintiffs' claim over these costs

24  are merely 'an inchoate right based on [an] unenforceable agreement.'"  *Id*. (citing *BOFI Fed.*

25  *Bank*, 2015 WL 5008860, at *2).  In contrast, the court found that because the employees had to

26  pay/cover the cost of customers who walked out of the restaurant without paying, they conferred

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 23

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

a benefit to their employer that belonged to them. *Id.* (denying summary judgment for this claim); *see also Alvarado v. Microsoft Corp.*, No. C09-189 MJP, 2010 WL 715455 (W.D. Wash. Feb. 22, 2010) (plaintiff could state a claim where licensing fees were originally paid by plaintiff).

Just as the plaintiffs in *Pengbo Xiao* were never entitled to the reimbursement of their plane tickets, Mr. Hesketh was never entitled to receive premium pay. *See, supra,* Section IV.A.  His claim that he has a right to premium pay is merely "an inchoate right based on [an] unenforceable agreement." *See Pengbo Xiao*, 387 F. Supp. 3d at 1191; *BOFI Fed. Bank*, 2015 WL 5008860, at *2.  It is insufficient to constitute a right or benefit conferred at Plaintiff's expense.

### 2.      Plaintiff Cannot Show Any Injustice

Separately, Plaintiff cannot show any injustice that would result from TRC "retaining" the value of any benefit conferred. *Young*, 191 P.3d at 1262.  "Enrichment alone will not trigger the doctrine; the enrichment must be unjust under the circumstances as between the two parties to the transaction." *Dragt v. Dragt/DeTray, LLC*, 161 P.3d 473, 482 (Wash. Ct. App. 2007).

TRC paid Mr. Hesketh for his regular job duties at his regular rate.  That this occurred during a pandemic does not make it *unjust.*  To find otherwise would amount to a judicial ruling that even where employers did not promise to pay their employees premium pay during a pandemic the law could suppose they did.  *See Byram*, 251 P. at 107 (Unjust enrichment "rests upon the principle that, whatsoever it is certain a man ought to do, that the law will suppose him to have promised to do.")

TRC paid Mr. Hesketh the agreed rate for the work he agreed to perform, and Mr. Hesketh does not allege he performed any additional work outside that which he was already expected to do.  Accordingly, Plaintiff fails to state a claim for unjust enrichment.

## V.      CONCLUSION

For the foregoing reasons, Defendant TRC respectfully requests the Court grant its motion for judgment on the pleadings with prejudice and enter judgment in Defendant's favor.

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 24

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1    DATED:  June 24, 2021                    By:  s/ Chelsea Dwyer Petersen

2                                             By:  s/ Heather Shook

                                              By:  s/ Margo S.  Jasukaitis
3                                             Chelsea Dwyer Petersen #33787

                                              Heather Shook #56610
4                                             Margo S.  Jasukaitis #57045

5                                             **Perkins Coie LLP**
                                              1201 Third Avenue, Suite 4900
6                                             Seattle, WA  98101-3099
                                              Telephone:  206.359.8000
7                                             Facsimile:  206.359.9000
                                              Email:   CDPetersen@perkinscoie.com
8                                                        HShook@perkinscoie.com
                                                         MJasukaitis@perkinscoie.com
9                                             Attorneys for Defendant Total Renal Care, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 25

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-99
Phone:  206.359.8000
Fax:  206.359.9000

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify under penalty of perjury that on June 24, 2021, I electronically filed the

3

foregoing **SECOND MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of

4

the Court using the CM/ECF system, which will send notification of such filing to the following:

5

6  Christina L Henry, WSBA 31273                    _____ Via Hand Delivery
   Email: chenry@hdm-legal.com                      _____ Via U.S. Mail, 1st Class, Postage
7  HENRY & DEGRAAFF, PS                                       Prepaid
   787 Maynard Ave S                                _____ Via Overnight Courier
8  Seattle, WA 98104                                _____ Via Facsimile
   Telephone: 206-330-0595                          __X__ Via E-Filing
9  Facsimile: 206-400-7609
   *Attorney for Plaintiffs*

10

11 J. Craig Jones, *Admitted Pro Hac Vice*          _____ Via Hand Delivery
   Email: craig@joneshilllaw.com                    _____ Via U.S. Mail, 1st Class, Postage
12 Craig Hill, *Admitted Pro Hac Vice*                       Prepaid
   Email: chill@joneshilllaw.com                    _____ Via Overnight Courier
13 JONES & HILL, LLC                                _____ Via Facsimile
   131 Highway 165 South
14 Oakdale, LA 71463                                __X__ Via E-Filing
   Telephone: 318-335-1333
15 Facsimile: 318-335-1934
   *Attorney for Plaintiffs*
16

17 Scott C. Borison, *Admitted Pro Hac Vice*        _____ Via Hand Delivery
   Email: scott@borisonfirm.com                     _____ Via U.S. Mail, 1st Class, Postage
18 BORISON FIRM, LLC                                         Prepaid
   1900 S. Norfolk Rd. Suite 350                    _____ Via Overnight Courier
19 San Mateo CA 94403                               _____ Via Facsimile
   Telephone: 301-620-1016
20 Facsimile: 301-620-1018                          __X__ Via E-Filing
   *Attorney for Plaintiffs*
21

22

DATED this 24th day of June 2021 in Seattle, Washington.

23

24
                                                 *Nanette Nielson*
25                                               Nanette Nielson, Legal Practice Assistant

26

DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS
(No. 2:20-cv-01733-JLR) – 26

152761927.12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-99
Phone: 206.359.8000
Fax: 206.359.9000