HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH J. HESKETH III, on his behalf
and on behalf of other similarly situated
persons,

                Plaintiff,

     v.

TOTAL RENAL CARE, INC., on its own
behalf and on behalf of other similarly
situated persons,

                Defendant.

No. 2:20-cv-01733-JLR

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE
PLEADINGS AND MOTION TO STRIKE
EXTRINSIC EVIDENCE

NOTE ON MOTION CALENDAR:

JULY 16, 2021

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE
(No. 2:20-cv-01733-JLR)
153075302.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

TABLE OF CONTENTS

                                                                                           Page

I.      INTRODUCTION................................................................................. 1

II.     LEGAL STANDARD ........................................................................ 2

III.    REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ......... 2

      A.     The Breach of Contract and Promissory Estoppel Claims Fail............................ 2

      B.     Plaintiff Does Not Allege All the Necessary Conditions Precedent Occurred........................................................................................ 7

      C.     Plaintiff's Good Faith and Fair Dealing Claim Fails ........................................... 8

      D.     Plaintiff's Equitable Reliance and Promissory Estoppel Claims Fail ................. 8

      E.     Plaintiff's Unjust Enrichment Claim Fails ........................................................ 9

IV.    MOTION TO STRIKE EXTRINSIC EVIDENCE........................................................11

V.     CONCLUSION................................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE
(No. 2:20-cv-01733-JLR) –i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

153075302.9

# I.    INTRODUCTION

Plaintiff's Second Amended Complaint fails to state a claim as a matter of law and dismissal with prejudice is warranted. In his opposition, Plaintiff: (1) fails to utilize the proper legal standard for a Rule 12(c) motion; (2) fails to address the pleading deficiencies specifically identified by this Court; and (3) attempts to focus the Court only on cherry-picked portions of the Disaster Relief Policy (the "Policy") while obfuscating the portions that gut his claims.

According to Plaintiff, TRC promised that President Trump's March 13 declaration of a national emergency immediately required teammates receive premium pay. This allegation does not state a plausible claim for relief. The Policy expressly disclaims such an obligation and the discretionary Policy must be read in its entirety. One cannot ignore that Parts A and D specifically reference Part C. One cannot credibly insist reliance on Part A, but not Part B. One cannot focus only on *one* sentence (underlined, below) to the exclusion of all other sentences.

| | |
|---|---|
| A | **4.12 Disaster Relief Policy (Dkt. #42 at pp. 10-11).** <br> The Disaster Relief Policy provides for pay continuance **during an emergency time frame** when a declared emergency or natural disaster **prevents teammates from performing their regular duties.** <u>A declared emergency or natural disaster shall be proclaimed by either the President of the United States, a state Governor or other elected official, or if local leadership (DVP/Palmer) deems it appropriate.</u> In the event of a state or federally declared natural disaster, this policy provides information relative to pay practices, work schedules, and facility or business office coverage. … |
| B | **The language used in this policy is not intended to constitute a contract of employment, either express or implied,** to give teammates any additional rights to continued employment, pay or benefits, or to otherwise change DaVita's policy of at-will employment. |
| C | EMERGENCY TIME FRAME <br> **The emergency time frame (and affected facility or business office)** will be identified **on a case-by-case basis** by local leadership (DVP, GVP and PSD) and the Disaster Governance Council, dependent on the severity of the disaster and location. |
| D | PAY PRACTICE FOR NON-EXEMPT TEAMMATES <br> If a **designated facility or business office** is open during the **emergency time frame,** teammates who report to their location and work their scheduled hours will be paid premium pay for all hours worked. Unless state law requires otherwise, premium pay will be one-and-one-half (1.5) times the teammate's base rate of pay. |

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE
(No. 2:20-cv-01733-JLR) - 1
153075302.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Rather than fully address the one document actually at issue in the pleadings, Plaintiff seeks to attach extrinsic evidence that is both inappropriate for a Rule 12 motion and inadmissible. TRC moves to strike these materials which, even if considered by the Court, do nothing to save Plaintiff's Second Amended Complaint.

## II. LEGAL STANDARD

Side-stepping the procedural posture of TRC's Rule 12(c) motion, Plaintiff argues his Second Amended Complaint "sufficiently set[s] forth facts to meet the notice requirements of Rule 8," and that under Rule 8, he is "not required to include all of his evidence in his pleading" because the "pleadings do not tell the whole story of the evidence." Dkt. #73 at p. 7.

Under Rule 8, a claim for relief must be "plausible on its face" and "raise a right to relief above a speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 570 (2007). "A complex, large-scale case such as a class action should naturally have a higher plausibility threshold than a simpler case." *Hargrave v. Univ. of Wash.*, Case No. C14-0376JLR, 2014 WL 2619148, at *3 (W.D. Wash. June 12, 2014) (Robart, J.) (citing *Twombly*, 550 U.S. at 557-58). "Apart from factual sufficiency [under Rule 8], a complaint is *also* subject to dismissal [under Rule 12(c)] where it lacks a cognizable legal theory, or where the allegations on their face show that relief is barred for some legal reason." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (emphasis added). Further, "[j]udgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Such is the case here.

## III. REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

### A. The Breach of Contract and Promissory Estoppel Claims Fail

#### 1. None of Plaintiff's Allegations Negate the Effective Disclaimers

Plaintiff does not identify any allegations that negate the clear and conspicuous disclaimers in the Teammate Policies. Such disclaimers can only be negated by clear and specific representations about actions that *must* be taken *despite* the disclaimer. *See Swanson v.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  *Liquid Air Corp.*, 826 P.2d 664, 675 (Wash. 1992).  Plaintiff does not allege any such specific
2  representations exist here.  Instead, he points to a handful of vague or irrelevant allegations that
3  were either: (a) already before this Court when it decided the disclaimers were effective; or (b)
4  were not alleged in the pleadings at all and should not be considered (*see supra* Section IV).

5  **The Disclaimers' Scope.**  Plaintiff contends "a disclaimer directed at preserving the at[-
6  ]will status of an employee does not apply to the claims for wages asserted by Hesketh." Dkt.
7  #73 at p.13.  Plaintiff cites no authority for this idea.  Even if he did, the disclaimer is not, as
8  Plaintiff suggests, exclusively "aimed at avoiding converting an employee from an at[-]will
9  employee to a contract employee." *Id.* at p. 6.  Instead, the disclaimer in the Policy disclaims not
10 only the intention to create a contract, but also any intention to "give teammates any additional
11 … pay or benefits … ." Dkt. #42 at p. 28.  The disclaimers in the Teammate Policies and
12 Plaintiff's acknowledgment are not limited to preserving the at-will status of teammates either.[1]

13 **We Said. We Did.**  Plaintiff once again argues TRC's "concern[] with its corporate
14 integrity and with doing what it says it will do" negates the disclaimers at issue.  Dkt. #73 at 8;
15 *see also* Dkt. #73 at p. 12.  This contention was previously before this Court when it decided the
16 disclaimers were effective as a matter of law; Plaintiff does not offer anything new here. *See*
17 Dkt. #35 at p. 9; Dkt. #19 at p. 2, ¶5.  In any event, allegations about something as amorphous as
18 corporate culture fall far short of showing the kind of detailed, mandatory provisions that
19 undercut otherwise effective disclaimers. *See, e.g., Swanson*, 826 P.2d at 674-75 (explaining
20 "*detailed* grievance or disciplinary procedures" that *must* be followed before an employee is
21 fired may negate a disclaimer stating employees are employed at-will) (emphasis added).

22 **Teammates' Inquires.**  Plaintiff's apparent arguments that other teammate questioned
23 whether the Policy might apply in light of various emergency declarations (Dkt. #73 at pp. 9-10)

24 _____

25 [1] *Id.* at p. 8 ("The language used in these policies and any verbal statements made by management are not intended to constitute a contract of employment, either express or implied . . . [e]xcept the policy of at-will employment, any policies may be canceled or modified at any time, at DaVita's sole discretion, with or without prior notice); *id.* at p.
26 21 ("I understand that the Teammate Policies . . . [is] not intended to create any contractual or legal obligations, express or implied, between DaVita and its teammates.")

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE (No.
2:20-cv-01733-JLR) - 3

153075302.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

is also unavailing. Like "We Said. We Did," this Court has already considered these allegations.[2] Critically, subjective impressions of teammates other than Plaintiff have no bearing at the pre-certification stage; even if they did, teammates' subjective understanding of a policy's application is "insufficient to establish an implied contract to that effect." *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1085 (Wash. 1984) (citation omitted). That is, whether teammates believe they ought to receive premium pay has no bearing on whether TRC made detailed representations *inconsistent* with its disclaimers. *See Swanson*, 826 P.2d at 675.

*Management Expectations*. Vague allegations that managerial employees "acknowledge" the Teammate Policies "create[] mutual expectations between the employees and DaVita" are insufficient to overcome the multiple express disclaimers contained in those policies. *See* Dkt. # 40 at p. 6, ¶23. To override an express disclaimer, Plaintiff must identify a "pattern of practice" in implementing the Policy that is inconsistent with the disclaimers. *Payne v Sunnyside Cmty. Hosp.*, 894 P.2d 1379, 1384 (Wash. Ct. App. 1995) (issue of fact where at-will policy inconsistent with both mandatory progressive discipline policy within same manual and leadership's practice of utilizing progressive discipline). No such inconsistency exists here.

*TRC's Intent in Creating the Policy.* Plaintiff argues TRC's intent in issuing the Policy is relevant to whether the disclaimers apply, and that TRC's intent cannot be gleaned from the pleadings. Dkt. #73 at 17. Yet TRC's intention in issuing both the Teammate Policies[3] and the Disaster Relief Policy[4] is specifically included in the pleadings. TRC's expressed intent reinforces, rather than negates, its discretion in applying the policies and the disclaimers: "the policies also allow for latitude in their application to individual circumstances or as the needs of our business may warrant." Dkt. #41 at p. 4, ¶ 14. And nothing in *Thompson* says intent in

---

[2] *Compare* Dkt. #19 at p. 5, ¶ 18 with Dkt. #40 at p. 11, ¶¶ 54, 55.
[3] Dkt. #41 at p. 4, ¶ 14 ("The Teammate Policies are designed to acquaint teammates with DaVita Inc. and provide information about working at DaVita. … The Teammate Policies have been provided to offer guidance in handling many issues, *but the policies also allow for latitude in their application to individual circumstances or as the needs of our business may warrant.*") (emphasis added).
[4] *Id.* at pp. 8-9 ¶ 36 (describing intent of Disaster Relief Policy); Dkt. #40 at p. 8, ¶ 36 (same).

DEF'S REPLY ISO MOTION FOR JUDGMENT AND TO STRIKE EXTRINSIC EVIDENCE (No. 2:20-cv-01733-JLR) - 4

153075302.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

issuing a Policy can negate an effective disclaimer. The *Thompson* court explained "employers will not always be bound by statements in employment manuals. *They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship … .*" *Thompson*, 685 P.2d at 1088 (emphasis added). TRC did just that.

**The COVID Language Insertion.** Plaintiff also highlights the March 2020 insertion of language into the Disaster Relief Policy explaining why the Policy does not apply to the COVID-19 pandemic, arguing there would be no need to make such an insertion if the policies' disclaimers truly resolved the issue. Dkt. #73 at p. 13. But the fact TRC provided additional explanation of why the Policy did not apply to the pandemic hardly compels a conclusion that the Policy actually did apply to the pandemic before that explanation. And the specific language in the explanatory section reinforces the discretionary language in the Policy: "The policy is effective upon a decision by local leadership and the Disaster Governance Council that a declared emergency or natural disaster prevents our teammates from working." *Id.* Language that reiterates the company's discretion cannot be construed as undercutting a disclaimer that rejects contractual obligations. Dkt. #42 at pp. 26, 28. Plaintiff offers no legal authority for his position the insertion of the COVID language "weighs against finding that the disclaimer was applicable." Dkt. #73 at p. 6. It does not.

Given the above, Plaintiff has not alleged any inconsistent representations by TRC sufficient to negate the effective disclaimers. As such, his contract and reliance claims fail.

## 2. There Are No Inconsistencies with the Discretionary Language

When this Court granted Plaintiff leave to amend his complaint, it explained, "if there is inconsistency regarding a policy's discretionary language, that may be sufficient to create a question of fact." Dkt. #35 at p. 14-15 (citing *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 478-79 (Wash. 2017). Plaintiff fails to plead the required inconsistency.

**COVID Not Localized.** Plaintiff acknowledges this Court "found that the Disaster [Relief] Policy was not a specific promise for a specific situation" because it is too discretionary

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    as a matter of law. Dkt. #73 at p. 15. However, Plaintiff seems to argue that the Court's

2    conclusion is wrong, because some of the discretionary language cited by the Court relates to the

3    company's determination of the specific facilities or offices affected, but the pandemic affected

4    the entire country. It is not clear why Plaintiff believes the scope of the pandemic affects

5    whether the policy's language is discretionary, and Plaintiff offers no authority for this argument.

6         *The And/Or Change.* Plaintiff also maintains TRC's January 2018 revision of the

7    Disaster Relief Policy undercuts the company's discretion in activating the Policy. Dkt #73 at p.

8    8-9. Not so. First, and most importantly, the version of the Policy Plaintiff now argues is

9    inconsistent with TRC's discretion is the same version of the Policy this Court already

10    considered and found unenforceable because of the Policy's discretionary language.[5] New

11    allegations about the history of that language are irrelevant.

12         Second, Plaintiff's argument is premised on a selective, self-serving (mis)reading of the

13    Policy's plain language. It is undisputed the Policy was changed to allow TRC to trigger the

14    Policy (if it deemed it appropriate and declared an emergency time frame) even when an elected

15    official had not declared an emergency or natural disaster (whereas under the "and" language,

16    TRC alone did not have that discretion). Dkt. # 42 at p. 26. In other words, the revised Policy

17    afforded *more* discretion to TRC.

18         *Modification and Retroactivity.* Plaintiff relies on *Cascade Auto Glass, Inc. v.*

19    *Progressive Casualty Insurance, Co.* and *Duncan v. Alaska USA Federal Credit Union, Inc.* to

20    argue TRC's ability to unilaterally modify its policies does not render any alleged promises

21    contained in the Teammates Policies handbook illusory. But *Duncan* differentiates between

22    cases where handbooks contain mandatory language that can represent a promise of specific

23    treatment under specific circumstances and cases like this one where discretion is explicitly

24

25

26

---

[5] *See* Dkt. #19 at p. 4, ¶15 (Amended Complaint quoting Disaster Relief Policy as "A declared emergency or natural disaster shall be proclaimed by either the President of the United States, a state Governor *or* other elected official, or if local leadership (DVP/Palmer) deems it appropriate") (emphasis added).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

retained to the employer to act as it sees fit. *See Duncan v. Alaska USA Fed. Credit Union, Inc.*, 199 P.3d 991, 997 (Wash. Ct. App. 2008) (citations omitted).

As such, Plaintiff has failed to identify any allegations showing inconsistency in the Policy's discretionary language, and his contract and estoppel claims fail for this reason, too.

To the extent Plaintiff argues TRC cannot "renege" on its alleged promise to pay premium pay or retroactively alter the conditions under which it will pay premium pay, his arguments miss the mark for the simple reason they presume that there is an enforceable promise to renege or alter at all. There is not.

**B.    Plaintiff Does Not Allege All the Necessary Conditions Precedent Occurred**

Despite this Court's recognition that multiple conditions precedent must be met to trigger premium pay under the Policy (Dkt. #35 at 11 ("The Disaster Relief Policy is not automatically triggered upon the proclamation of an emergency or natural disaster by government officials.")), Plaintiff continues to insist the sole trigger is proclamation of an emergency by government officials. Dkt. #73 at p. 8. Under Plaintiff's theory, any governmental proclamation would automatically compel TRC to pay its teammates premium pay. Such a reading runs afoul of both common sense and the plain language of the Policy.

Plaintiff ignores entire portions of the Policy that doom his claim. Plaintiff refuses to acknowledge the Policy's express provision for "pay continuance *during an emergency time frame* when a declared emergency or natural disaster *prevents teammates from performing their regular duties*." Dkt. #42 at p. 27-28 (emphasis added). As to the first condition, it is undisputed no such time frame was designated here. As to the second condition, Plaintiff admits it is not satisfied: he confirms he "does ***not*** allege … he 'was prevented from performing his regular duties during the pandemic.'" Dkt. #73 at p. 4 (emphasis in original).

Even the select portions of the Policy on which Plaintiff relies do not say what he claims they do. Plaintiff emphasizes the Policy's use of the word "shall," explaining "it indicates that, when one of the named entities declares an emergency, the triggering of the Policy is automatic

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

and compulsory." Dkt. #73 at p. 8. But the "shall" to which Plaintiff refers simply indicates who has authority to declare an emergency, not that a single action, let alone a governmental declaration, triggers the Policy: "A declared emergency or natural disaster *shall* be proclaimed by either the President of the United States, a state Governor or other elected official, or if local leadership (DVP/Palmer) deems it appropriate." *Id*. (emphasis added). As noted above, Plaintiff's theory of the case is predicated on a blatant misreading of select portions of the Policy. Such manipulation of the Policy's plain language should not be indulged.

## C.  Plaintiff's Good Faith and Fair Dealing Claim Fails

Plaintiff tries to argue the recently decided *Bill & Melinda Gates Foundation v. Pierce*, 475 P.3d 1101 (Wash. Ct. App. 2020) case supports his claim TRC somehow breached a duty of good faith and fair dealing by determining the Policy did not apply to the pandemic. But *Pierce* is very different from this situation and does not support Plaintiff's position at all. In *Pierce*, both parties agreed there was an enforceable bi-lateral employment contract, and the question was whether the Foundation exercised good faith and fair dealing related to that contract. Here, there is no contract, and Washington courts have consistently held that there cannot be a breach of the duty of good faith and fair dealing where there is no contract. *See, e.g.*, *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004); *see also* Dkt. #26 at p. 20 (collecting cases).

Plaintiff offers no other authority to save his claim for breach of the implied duty of good faith and fair dealing.[6] As such, TRC is entitled to judgment as a matter of law on this claim.

## D.  Plaintiff's Equitable Reliance and Promissory Estoppel Claims Fail[7]

Plaintiff "must allege that he justifiably relied upon the [alleged] promise" and "reliance on the **specific provision** at issue." Dkt. #35 at 12, n. 6 (citations omitted). As the Court advised

---

[6] Plaintiff erroneously conflates his good faith and fair dealing allegations with his contract and promissory estoppel analysis. *See, e.g.*, Dkt. #73 at p. 16. To do so puts the cart before the horse. Plaintiff cannot allege failure to execute a contract in good faith implies the existence of a contract where there isn't one.

[7] It is unclear whether Plaintiff is asserting a *Thompson* equitable reliance or independent estoppel claim, but regardless, the deficiencies in the complaint "similarly doom" each claim. Dkt. #35 at 12.

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE (No.
2:20-cv-01733-JLR) - 8

153075302.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  Plaintiff, his sole allegation that "he 'continued to work his regularly scheduled hours' . . . leaves

2  unclear whether he relied on the Disaster Relief Policy in doing so.'" *Id.*

3  Ignoring this basic flaw (and the Court's invite to correct it), Plaintiff's Second Amended

4  Complaint fails to allege he continued to work *because of* the Policy. *See generally* Dkt. #40.

5  Nor does Plaintiff allege he had knowledge of the Disaster Relief Policy, and he can't have relied

6  on a Policy of which he wasn't aware. *See Stewart*, 762 P.2d at 1146. Plaintiff has not—and

7  cannot—allege he continued to work because of the Disaster Relief Policy. It is undisputed in

8  the pleadings that Plaintiff knew as early as late March 2020 that he was not receiving premium

9  pay, and yet he continued to work for TRC with knowledge TRC would not be paying premium

10  pay.[8] Dkt. #41 at p. 14, ¶ 57. Plaintiff's reliance claims fail for this reason.

11  Plaintiff tacitly admits this flaw when he argues his reliance is established by the fact he

12  continued to work after his general acknowledgement of the Teammate Policies. Dkt. #73 at p.

13  4. But again, there are no allegations Plaintiff continued to work *in reliance on* the Teammate

14  Policies. *See* Dkt. #40. To the extent Plaintiff indirectly argues he was aware of the Disaster

15  Relief Policy because he acknowledged the Teammate Policies generally, he would necessarily

16  also then be aware of the disclaimers and the discretionary language in the Policy, which render

17  any alleged reliance unreasonable. Dkt. #42 at pp. 10-11; *see, e.g., Quedado v. Boeing Co.*, 276

18  P.3d 365, 369 (Wash. Ct. App. 2012*)*. As such, Plaintiff's reliance claims fail.

19  **E.     Plaintiff's Unjust Enrichment Claim Fails**

20  Plaintiff wholly ignores TRC's authority that his unjust enrichment claim fails as a matter

21  of law. It is undisputed Plaintiff did not perform any additional services for which he was not

22  paid, and therefore he could not have conferred a benefit "at Plaintiff's expense." *See Mastaba,*

23  *Inc. v. Lamb Weston Sales, Inc.,* 23 F. Supp. 3d 1283, 1295-96 (E.D. Wash. 2014). It is also

---

[8] Further, continuing to work, on its own, is not a change in position. *Baker v. City of SeaTac*, 994 F. Supp. 2d 1148, 1160 (W.D. Wash. 2014) (citing *Havens v. C&D Plastics, Inc.*, 876 P.2d 435, 443-44 (Wash. 1994) (quoting (Second) Restatement of Contracts § 90 (1981))) ("Reliance . . . means a change in position based on the promise."); *see also Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879-80 (9th Cir. 1989) (no reliance where there was "no evidence [Plaintiff's] interpretation of the [handbook] actually induced him to remain" at the company).

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE (No.
2:20-cv-01733-JLR) - 9

153075302.9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

apparent from Plaintiff's brief that the alleged "injustice" flows solely from Plaintiff's *belief* TRC promised him premium pay, regardless of whether TRC actually owed him such pay. *See* Dkt. #73 at p. 4 (plaintiff alleges he "is owed premium pay because he worked his regularly scheduled hours for TRC and was not paid premium pay *as promised*") (emphasis added and removed). But —as this Court previously found— there was no such promise. Dkt. #35 at pp. 10, 13. Plaintiff has nothing more than "an inchoate right based on [an] unenforceable agreement," and he therefore cannot have conferred a right to TRC as a matter of law. *Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1185, 1191 (W.D. Wash. 2019).

Plaintiff relies on *Kingston v. Int'l Bus. Machines Corp.*, 454 F. Supp. 3d 1054, 1062 (W.D. Wash. 2020), which this Court cited for the general proposition that, "[t]he concept of equitable jurisdiction exists to permit the court to do justice when the letter of the law either does not cover the situation or may tend to dictate an inequitable result." Dkt. #35 at p.13. The alleged inequitable result in *Kingston* is distinguishable from this case. In *Kingston*, a sales employee sued his former employer for sales commissions he earned but was not paid upon termination because the commission agreement allowed the employer to cancel the agreement at any time. 454 F. Supp. 3d at 1056.[9] The employee never received any compensation for the benefit he conferred (the sales). *Id.* The court found (*id.* at 1062):

> Plaintiff plead sufficient facts upon which a judge could reasonably find the terms of [a written commission plan] inequitable, and the acceptance or retention of the benefit [of an alleged $124,425 in commissions generated by sales for which Plaintiff was not paid] conferred by Plaintiff upon Defendant without payment of its value equally inequitable. The Court is *further confirmed in this conclusion by the circumstances under which Plaintiff alleges he was terminated*, allegations which the Court accepts as true for purposes of analyzing this motion.

Here, unlike *Kingston*, there are no allegations Plaintiff was not paid premium pay in retaliation for complaining about discriminatory treatment. Nor are there any allegations

[9] Notably, the *Kingston* Court implied the commission agreement could be a valid contract but found that there was no breach because it allowed the employer to cancel the commissions. *Id.* at 1060. Under Washington law, unjust enrichment claims based on the same matter covered by an express contract fail as a matter of law. *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1075 (W.D. Wash. 2013) (finding plaintiffs cannot recover for an implied contract claim because they had valid employment contracts with the defendants); *Chandler v. Wash. Toll Bridge Auth.*, 137 P.2d 97 (Wash. 1934) (same). The *Kingston* Court does not address this authority or principle.

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE (No.
2:20-cv-01733-JLR) - 10

153075302.9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Plaintiff performed services without payment. It is undisputed TRC paid Plaintiff his regular

rate for performing his regular job duties. Dkt. #41 at p. 13, ¶ 54. Further, the *Kingston*

agreement clearly provided for commission payments (even if it gave the employer the authority

to cancel them). But here the Disaster Relief Policy does not clearly provide for premium pay;

instead, its implementation is to be determined on a "case-by-case" basis. Dkt. #35 at p. 3.

Accordingly, TRC is entitled to judgment on Plaintiff's unjust enrichment claim.

## IV.    MOTION TO STRIKE EXTRINSIC EVIDENCE

Pursuant to Local Rule 7(g), TRC respectfully requests the Court strike the extrinsic

evidence Plaintiff attaches to his opposition (Dkt. #74-74.4), and the references to those exhibits

in his brief (Dkt. #73[10]). Extrinsic evidence is irrelevant to a motion under Rule 12(c), which is

determined "*on the face of the pleadings.*" *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d

1542, 1550 (9th Cir. 1990) (emphasis added); *Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Cir.

2005) (courts must disregard facts that are not alleged in or attached to the pleadings). None of

the evidence is alleged or incorporated by reference in the pleadings (nor does Plaintiff argue

that it is or request judicial notice).[11] As such, the Court should strike it all from the record. *See*

*In re USPS Privacy Act Litig.*, CASE NO. MD08-1937JLR., 2009 WL 2710261, *2 (W.D.

Wash. Aug. 25, 2009) (granting motion to strike evidence and references to the evidence

contained in the motion as outside the scope of a motion to dismiss) (Robart, J.); *Hook v. Curry*,

No. C 06-3148 PJH (PR), 2008 WL 685646, *2 (N.D. Cal. Mar. 13, 2008) (granting motion to

strike declarations and factual allegations therein as irrelevant to motion to dismiss).

---

[10] *See* [Proposed] Order Granting Defendant Total Renal Care, Inc.'s Motion for Judgment on the Pleadings and Motion to Strike filed contemporaneously herewith.

[11] Plaintiff has not requested that the Court convert TRC's Rule 12(c) motion to a summary judgment motion, and the Court has discretion to decline to consider extrinsic evidence and not convert the motion. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007); *see also In re Mortg. Electronic Registration Systems, Inc.*, 754 F.3d 772, 781(9th Cir. 2014) (holding a dismissal motion is converted to a summary judgment motion only if it appears the court actually relied on the extraneous materials in ruling on the motion). If the Court considers the extrinsic evidence, TRC respectfully requests the opportunity to respond. Fed. R. Civ. P. 12(d).

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE (No.
2:20-cv-01733-JLR) - 11

153075302.9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Much of the extrinsic evidence, and specifically all the emails attached to Dkt. #74 Exhibits A and C, should be stricken for the separate reason that it is barred by Federal Rules of Evidence 901(a) and 802. First, that a document is produced in discovery does not establish the authenticity required for admissibility. Fed. R. Evid. 901(a). Second, the documents include statements not made while testifying in the current case, are offered to prove the truth of the matters asserted therein, and do not fall into any hearsay exception. Fed. R. Evid. 802.[12]

Even if this Court considers Plaintiff's evidence, it does not alter the analysis. Despite Plaintiff's creative characterizations,[13] Plaintiff's evidence still boils down to (1) emails from teammates inquiring at the start of the pandemic whether the Disaster Relief Policy applied; (2) DaVita unequivocally confirming that it did not; and (3) testimony from Plaintiff that DaVita said they had discretion in the policy, and they acted on that discretion. In other words, Plaintiff's evidence confirms that all of DaVita's actions have been consistent with the disclaimers and the discretionary language in the Policy and its position that no Emergency Time Frame was declared. Plaintiff offers nothing to negate that.

Plaintiff's proffered evidence does nothing but confirm that—even with the benefit of discovery[14]—he cannot cure the fatal flaws in his complaint. As such, it should be dismissed with prejudice. *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## V.    CONCLUSION

For the foregoing reasons, Defendant TRC respectfully requests the Court grant its motion for judgment on the pleadings and motion to strike in their entirety.

---

[12] For example, the emails attached to Dkt. #74-1 (at pp. 48-62) are offered for the proposition that employees "believed" the Policy was activated by the President. Dkt. #73 at p. 9. And, emails found in Dkt. #74-3 are offered to support the statement "multiple DaVita employees and managers in different regions around the country arrived independently at the conclusion, based on the plain wording in the Handbook, that the Policy should have been triggered by the emergency declarations issued by the President and/or their local authorities." Dkt. #73 at pp. 10-11.
[13] *See, e.g.*, Dkt. #73 at p. 10 (describing Mr. Gardner as making a "unilateral" "ruling" that that the Policy did not apply by responding "The answer is no." when, in fact, Mr. Gardner's informal email specifically noted that the issue would be discussed further: "The answer is no. But I'm copying [legal counsel] so that it is on her radar, I don't [sic] want to make sure the President's declaration does not conflict with our own policy." Dkt. #74-1 at p. 56.
[14] Plaintiff certainly could have included this extrinsic evidence in his Second Amended Complaint which he admittedly filed late because he was reviewing discovery. *See* Dkt. #43 at pp. 6, 9; Dkt. 44-15 at p. 2.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

DATED: July 16, 2021

By: s/ Chelsea Dwyer Petersen
By: s/ Heather L. Shook
By: s/ Margo S. Jasukaitis
Chelsea Dwyer Petersen #33787
Heather L. Shook #56610
Margo S. Jasukaitis #57045
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: CDPetersen@perkinscoie.com
     HShook@perkinscoie.com
     MJasukaitis@perkinscoie.com

Attorneys for Defendant
Total Renal Care, Inc.

DEF'S REPLY ISO MOTION FOR JUDGMENT
AND TO STRIKE EXTRINSIC EVIDENCE (No.
2:20-cv-01733-JLR) - 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

153075302.9

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christina L Henry, WSBA 31273
Email: chenry@hdm-legal.com
HENRY & DEGRAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
Telephone: 206-330-0595
Facsimile: 206-400-7609
*Attorney for Plaintiffs*

_____ Via Hand Delivery
_____ Via U.S. Mail, 1st Class, Postage
        Prepaid
_____ Via Overnight Courier
_____ Via Facsimile
__X__ Via E-Filing

J. Craig Jones, *Pro Hac Vice*
Email: craig@joneshilllaw.com
Craig Hill, *Pro Hac Vice*
Email: chill@joneshilllaw.com
JONES & HILL, LLC
131 Highway 165 South
Oakdale, LA 71463
Telephone: 318-335-1333
Facsimile: 318-335-1934
*Attorney for Plaintiffs*

_____ Via Hand Delivery
_____ Via U.S. Mail, 1st Class, Postage
        Prepaid
_____ Via Overnight Courier
_____ Via Facsimile
__X__ Via E-Filing

Scott C. Borison, *Pro Hac Vice*
Email: scott@borisonfirm.com
BORISON FIRM, LLC
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Telephone: 301-620-1016
Facsimile: 301-620-1018
*Attorney for Plaintiffs*

_____ Via Hand Delivery
_____ Via U.S. Mail, 1st Class, Postage
        Prepaid
_____ Via Overnight Courier
_____ Via Facsimile
__X__ Via E-Filing

DATED this 16th day of July 2021 in Seattle, Washington.

*s/ Janet Davenport*
Legal Practice Assistant

CERTIFICATE OF SERVICE
(No. 2:20-cv-01733-JLR) –1

153075302.6
153075302.9